**STATE of Missouri, Respondent,**

**v.**

**Henry Eugene WEBB, Appellant.**

No. 50535.

Supreme Court of Missouri,

Division No. 1.

Oct. 12, 1964.

———◆———

Thomas F. Eagleton, Atty. Gen., Donald L. Randolph, Asst. Atty. Gen., Jefferson City, for respondent.

Donald S. McDonald, St. Louis, for appellant.

HOUSER, Commissioner.

Defendant Henry Eugene Webb and his brother Louis Webb, Jr. were jointly charged with the crimes of burglary in the second degree of and stealing from the store and bar of Thomas Lee Floyd, in the City of St. Louis certain property of the value of $153.70. Each defendant was charged under the habitual criminal act, the information alleging that each had been previously convicted of five felonies. Both defendants pleaded not guilty. Lois Webb, Jr. later withdrew that plea and entered a plea of guilty. Trial of the charges against defendant Henry Eugene Webb resulted in a jury verdict finding him "guilty of Stealing property in the amount of over fifty dollars" and not guilty of the burglary charge. On a finding that defendant had been previously convicted of five felonies the circuit court adjudged that he be committed to the department of corrections for a period of 6 years. Defendant's trial counsel filed a brief in this court on appeal.

Defendant's sole point on this appeal is that the court erred in overruling his motion for a judgment of acquittal because the state failed to produce any substantial evidence to sustain a conviction on the charge of stealing; that the state's evidence was insufficient to prove that defendant feloniously did take, steal and carry away 33 pints of whiskey worth $33, 4 cases of beer worth $8, the property of Thomas Lee Floyd, and 41 cartons of cigarettes worth $112.70, the property of Guy Vending Company, Inc., with intent to deprive the owner of the use thereof and to convert it to his own use, as charged in the information.

■ In determining the sufficiency of evidence to sustain a conviction on a motion for a judgment of acquittal the facts in evidence and the favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. State v. Watson, Mo.Sup., 350 S.W.2d 763, and cases cited l. c. 766.

The state contends that the evidence of defendant's recent possession of stolen property was sufficient proof that he was the thief to make a case and support the verdict. Defendant contends that the state's evidence and the reasonable inferences to be drawn therefrom might be entirely true and yet the defendant be entirely innocent of the charge of stealing; that at best the state's evidence establishes only that defendant came into possession of the stolen property in conjunction with others after this property was actually taken from Floyd's Bar, but that this is insufficient to convict him of the offense of stealing; that in order for a defendant's recent possession of property stolen in a burglary to afford evidence of his guilt his possession must be personal and exclusive; that this is a case of joint possession of the property in a residence shared by Louis Webb, the admitted thief, Pauline Webb and defendant, with no evi-

dence of conspiracy or a common purpose to commit the offense; and that there was no evidence that defendant exercised any control or dominion over the stolen property, such as claiming it or undertaking to sell it or control its disposition.

Appellant's statement of the facts was adopted by the state as fair and accurate. We draw upon it liberally, without the use of quotation marks, in stating the following facts, which the jury could have found:

Thomas Lee Floyd owned and operated a tavern on North Broadway in St. Louis. Sometime between 2:30 a. m. Saturday, August 3, 1963, when Mr. Floyd closed his tavern for the evening, and 8:45 a. m. August 3, when he returned to his tavern, someone broke into the tavern and took therefrom certain quantities of whiskey and beer, the property of Mr. Floyd, together with a number of cartons of cigarettes, and money from the cigarette machine, the property of Guy Vending Company. The total value of the property removed was over fifty dollars. About 1:30 on Sunday afternoon, August 4, while Mr. Floyd was washing his car in the rear of his tavern he saw defendant and defendant's brother, Louis, in an area close to the back of his tavern at the residence of a Mr. Ray Brawley, the father-in-law of Louis Webb. Defendant and his brother were there from time to time for a period of several hours. Between 4 and 5 p. m. that day Mr. Floyd saw defendant drive away from the Brawley residence in a black 1950 model Ford automobile which "looked to be heavily loaded," and about 15 minutes later defendant walked back up the alley to the Brawley residence. The contents of the automobile were not known to Mr. Floyd. At no time while he observed defendant and Louis at the Brawley residence did Mr. Floyd see any of the items taken from his place of business during the early hours of Saturday morning. At about 7:30 or 8 p. m. on Sunday, August 4, Mr. Floyd and his brother-in-law Jasper Valenti saw defendant, Louis Webb and one Robert Nelson on 17th Street, near Madison, carrying what appeared to be beer boxes, a wine case, a black satchel or suitcase, and a fan from the back of the black 1950 Ford which defendant had driven away from the Brawley residence earlier that day. The actual contents of the boxes, wine case and satchel or suitcase were not seen. The three men were transporting these items to defendant's residence, at 1635-A North 17th Street. Defendant made two trips, during which he carried at least 4 or 5 cartons. Messrs. Floyd and Valenti went to police headquarters, conversed with a lieutenant, and thereafter returned to the vicinity of defendant's home, accompanied by three policemen, at approximately 8:30 or 9:30 p. m. Sometime between their arrival and 10:15 p. m. Louis Webb arrived at defendant's residence driving the black 1950 Ford. Louis was then and there placed under arrest. At approximately 10:15 p. m. the three policemen were joined by a police officer. Immediately thereafter the policemen entered defendant's home and found therein defendant, Pauline Webb and Pauline's child. Pauline Webb was the wife of Billy Joe Webb, brother of defendant and Louis. Pauline was living with defendant in defendant's 3-room flat, sleeping in the same bedroom with defendant. Pauline's husband was then serving a term in the city jail. Defendant was placed under arrest and a search of the premises was conducted. A cardboard box containing various half-pint bottles of liquor, vodka and whiskey was found in the kitchen closet. A black carrying case containing various brands of cigarettes was found under the bed in the bedroom and three cases of beer were also found there. Some of the half-pint bottles of whiskey and vodka bore Mr. Floyd's name and his state license number and the cigarettes found bore the city stamp assigned to Guy Vending Company. The whiskey, cigarettes and beer found in defendant's house were the items taken from Mr. Floyd's tavern on North Broadway between 2:30 and 8:30 a. m. on August 3.

Defendant did not take the stand. Several relatives and close associates of de-

fendant testified to facts which, if believed, would have established an alibi. Defendant's brother, Louis Webb, testified that he (Louis) burglarized Floyd's bar on North Broadway in the early morning hours of August 3 and removed the whiskey, beer and cigarettes found by the police Sunday, August 4, at defendant's residence; that defendant was not with him but that he was alone in the commission of the offense and had not discussed or planned it with anyone; that after removing the whiskey, beer and cigarettes from the tavern he loaded the property into an automobile Louis had stolen the preceding Friday and proceeded to defendant's house at 1635 North 17th Street, where he, Louis, was then living. There he unloaded the cases containing the stolen property and put them under the bed and in the kitchen closet; that no one helped him unload the stolen merchandise; that after unloading it he awakened defendant and Pauline Webb, who was at defendant's residence at this time, and told them that he had stolen some property and brought it into the house. The boxes and the suitcase in which the stolen articles were found in defendant's residence were similar to the containers in which the stolen property was located when he placed it in defendant's house. Louis Webb was an inmate in the penitentiary at the time of trial, doing 10 years on three or four convictions of burglary and stealing, and car theft. He had previously been convicted of operating a motor vehicle without the consent of the owner, larceny of a motor vehicle (twice) and attempted robbery, first degree.

■■■ The recent, exclusive and unexplained possession of property stolen in the course of a burglary is sufficient to sustain a finding that the possessor participated in the theft. State v. Knicker, Mo.Sup., 366 S.W.2d 400, and cases cited, 403; State v. Jones, Mo.Sup., 358 S.W.2d 782. That the possession was recent, the property having been found in defendant's house on the day following the burglary, is not questioned. Defendant's possession was unexplained in

the minds of the jurors, for they rejected the explanation offered by defendant's witnesses. Defendant's explanation was a question of fact for the jury. State v. Jones, supra, 358 S.W.2d l. c. 784 [3]. With respect to the requirement that the possession be exclusive, the property was found in a closet in the kitchen and under the bed in the bedroom of defendant's residence. It is argued that since defendant's brother and sister-in-law were also occupying the same premises with defendant, the possession was not exclusively that of defendant. The requirement of exclusive possession does not mean that the possession necessarily must be separate from all others, State v. Watson, supra, 350 S.W.2d l. c. 766, provided there is other evidence to connect defendant with the offense, State v. Oliver, 355 Mo. 173, 195 S.W.2d 484, 486 [6], e. g., evidence that defendant, with conscious knowledge of the fact that the property was stolen, exercised dominion and control over it. The fact that stolen property is found on the premises of a man who has several relatives living with him, in a place to which others in the family have free access, would not alone be sufficient to sustain a conviction of stealing, 32 Am.Jur. Larceny, § 141; that bare fact would disclose only a prima facie constructive possession. State v. Drew, 179 Mo. 315, 78 S.W. 594, 596. In this case, however, there is sufficient other evidence, in addition to the evidence that the stolen property was found on defendant's premises, to connect defendant with the offense, and to show actual, conscious possession of, and the exercise of dominion and control over, the stolen property.

The jury could find that defendant knew as early as Saturday morning, only a few hours after the burglary, that the property was stolen merchandise. Defendant's brother Louis, called as a witness for defendant, testified that he informed defendant of this fact at that time. Louis also testified that he hauled the property away from the tavern in a 1950 Ford automobile which Louis admitted he had stolen the previous night for that purpose. Defendant was seen

driving that automobile the next day, on Sunday afternoon, and it appeared to be heavily loaded. The jury could infer that the stolen merchandise, placed in the automobile on Saturday morning, was still in the automobile when defendant drove it on Sunday afternoon. The jury could disbelieve Louis' testimony that he alone and unaided had unloaded the merchandise and carried it into defendant's apartment just before daybreak on Saturday morning, and could find from the evidence that the merchandise was not unloaded from the automobile and placed in defendant's apartment until Sunday evening, August 4, between 7:30 and 8 o'clock, at which time defendant, Louis and Nelson were observed carrying boxes and a black suitcase into defendant's apartment. The foregoing, together with the testimony that defendant was then seen carrying at least 4 or 5 cartons, in two trips, from the black 1950 Ford to defendant's apartment, and Louis' testimony that the boxes and suitcase in which the stolen property was found in defendant's residence were similar to the containers in which the stolen property was contained when it was brought into defendant's house, was sufficient to authorize the jury to infer and find that the boxes and suitcase carried into 1635-A North 17th Street on Sunday evening, August 4, between 7:30 and 8 o'clock, contained the stolen property; that defendant then had conscious knowledge that it was stolen property, and that defendant was then and there exercising dominion and control over it.

We have compared the facts in the cases cited by defendant[1] for the proposition that a conviction based upon suspicion, surmise and conjecture may not be permitted to stand. Without undertaking a case-by-case analysis suffice it to say that the facts in these cases are so different from the facts under review that the principles of law announced therein have no application here.

■ The amended information was sufficient in form and substance to charge the crimes of burglary in the second degree and stealing under § 560.156, V.A.M.S., State v. Edmonds, Mo.Sup., 347 S.W.2d 158 [3], and to charge defendant under the habitual criminal act, § 556.280, V.A.M.S. The verdict, finding defendant "guilty of Stealing property in the amount of over fifty dollars" and not guilty of burglary, second degree, is not correct in form because it does not state that the jury found defendant guilty of stealing property *of the value* of over fifty dollars. Reference to the amended information, evidence and instructions, however, indicates without doubt that defendant was charged, tried and convicted of stealing property of the value of more than fifty dollars, and under the ruling in State v. Mitts, Mo.Sup., 347 S.W.2d 677 [3], this is not reversible error. The parties stipulated that defendant had been previously convicted of the five felonies as alleged in the information, and the court made its proper finding and assessed the punishment correctly under the habitual criminal act. The 6-year sentence is within the range of punishment in the penitentiary (two to ten years) prescribed for the crime of which defendant was convicted. § 560.-161, subd. 1(2), V.A.M.S. Defendant was represented by an attorney throughout the trial, at the time of the granting of allocution and passing of sentence, and on appeal. The judgment is unexceptional and is responsive to the verdict.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.

---

1. State v. Watson, Mo.Sup., 350 S.W.2d 763; State v. Schrum, 347 Mo. 1060, 152 S.W.2d 17; State v. Dilley, 336 Mo. 75, 76 S.W.2d 1085; State v. Carter, Mo. Sup., 36 S.W.2d 917; State v. Mathis, Mo.App., 129 S.W.2d 20; State v. Jackson, 126 Mo. 521, 29 S.W. 601.