STATE of Missouri, Respondent,

v.

James Robert ARCHER, Appellant.

No. 51816.

Supreme Court of Missouri,
Division No. 1.

Oct. 10, 1966.

Robert G. Duncan, Pierce, Duncan, Beit-ling & Shute, Kansas City, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, Clyde Burch, Special Asst. Atty. Gen., Kirksville, for respondent.

HIGGINS, Commissioner.

Appellant was charged by information in the Circuit Court of Clay County, March 3, 1965, with the felonies of burglary in the second degree and stealing. A jury found him guilty and assessed his punishment at two-years' imprisonment in the penitentiary on each charge. The court adjudged and sentenced appellant to serve the terms consecutively for a total of four-years' imprisonment. Sections 560.070, 560.095, and 560.-110, V.A.M.S.

Trial began June 28, 1965, and the following evidence was adduced. Edward

Glenn Ellington owned and operated a drive-in ice cream and sandwich shop known as Dairy-B in North Kansas City, Clay County, Missouri. On the night of January 14, 1965, he had valuable goods, wares, and merchandise and over $500 in currency at the Dairy-B. He kept the money in the office area in a metal box in a metal locker and, on the night of January 14, 1965, $478 was taken from the box and $40 was left there. He was not present when the business was closed at midnight, January 14, 1965. When he returned to the Dairy-B at 8:30 A.M., January 15, 1965, he found the side door glass broken and saw marks where a crowbar had been used to pry it open. The door was still cracked open; the locker had been pried open, and desk drawers were open. He called the police and they made an investigation. Ronnie Davidson, an employee of the Dairy-B, found the money box in a levee ditch about 200 feet from the Dairy-B. Ronnie Davidson continued working for Dairy-B for a while. He owned a red 1964 Ford and was at one time charged with, but not prosecuted for, the crime.

Charles R. Ross, detective with the North Kansas City Police Department, investigated the crime scene at 9:20 A.M., January 15, 1965 and noted the pry marks, broken door and glass, and the disorder in the office. A month after the burglary he ordered appellant brought in for investigation. During that interview appellant said he had been at Waid's Restaurant in Antioch on the night of the crime when he heard James K. Page and Lee Kenneth Sheets offer a third person $20 to take them to North Kansas City. Appellant would not name the third person but, from identification of the subject's automobile, a 1954 blue Buick, Detective Ross found that person to be Gary Reed. Appellant told Detective Ross also that Reed agreed to take Page and Sheets to North Kansas City; that they got out of the car at the Dairy-B; that they later returned; that Page and Sheets had plenty of money and used it to take up I.O.U.s

for pool debts owed appellant. Appellant at this time denied any part in the crime and stated that he understood Page and Sheets had gone to New Orleans after the crime. According to Detective Ross, appellant testified upon preliminary hearing that he was in Kansas on the night of January 14 and the early morning of January 15, 1965. Page's fingerprints were found in the Dairy-B and a coin changer and cash drawer were found at the place where appellant understood Page and Sheets to say the car waited while the crime was committed. Appellant and Gary Reed were arrested and charged with burglary and stealing later in the day of this interview.

Gary Michael Reed was playing pool with appellant at the Diamond Cue Poolroom in Antioch Shopping Center on January 14, 1965. They left about 11:15 P.M. and went to Waid's Restaurant where they "discussed" the Dairy-B with James Page. Appellant and Page offered him $20 to take them to "Northtown" and wait for them to "burglarize the Dairy-B." He agreed and drove them there in his 1954 blue Buick. When they arrived, the Dairy-B was still open and Ronnie Davidson's 1964 red Ford was sitting in front. They drove over to the North Kansas City bowling alley and then returned. They drove by the Dairy-B, noting that it was closed and also noting the side door. They drove around the immediate area and "I stopped and let those two out, then I drove up a block back up Antioch Road and turned in and waited for them." They returned in "about half an hour, forty-five minutes," and they had a metal box with money in it. They gave Reed the $20 promised him and all went back to Waid's and then Reed took them to Page's home. They did not have a metal box with them when they got out of Reed's car at the Dairy-B, and they had only the money at Waid's. Reed pleaded guilty for his part in this crime.

James Keith Page was an outpatient at St. Joseph State Hospital at trial time

but he was not an incompetent. He was at the Diamond Cue with Gary Reed and appellant and went with them to Waid's in Reed's Buick. At Waid's they had a conversation which "involved a burglary and larceny" and the Dairy-B. He had learned that there was money at the Dairy-B. They drove to the Dairy-B and, upon finding it open, drove around to the bowling alley. Upon return to the Dairy-B, "Gary Reed let us out. * * * We waited until he'd gotten away from the place * * * Mr. Archer, he stayed on the outside and I broke in. * * * He was to be lookout. * * * He stood behind the restaurant that was connected with the locker plant. * * * I broke in. * * * He was supposed to signal." Page left once and returned and when he came out the second time appellant was standing at the door waiting for him. They ran to the car and split the money, approximately $300, except for the $20 paid to Reed. Page and a Kenneth Sheets went to Colorado about a week later and returned in March.

Appellant denied committing the crime and said that he was with Charles J. Williams at the Swingtown Club in Kansas City, Kansas, on the night in question. His version was that Page merely paid him some money owed to him.

Charles J. (Jerry) Williams said he met appellant at the Diamond Cue about 10 or 10:15 P.M., January 14, 1965, and that they went to a private club in Kansas where they stayed until about 2 A.M. He took appellant home about 3 A.M.

Robert E. Stephens said he saw appellant and Williams at the Swingtown Club in Kansas on a Thursday night in January 1965. Appellant arrived about 11 P.M. and left about 2:30 A.M.

Gwendolyn C. Stanberger, sister of Page, stated that appellant asked her to visit her brother in jail and tell him that appellant had set up an alibi for them.

There was testimony from Bonnie Jean Page, James's mother, that appellant told

her that if Page testified against him the whole family would "get it." Richard Crain was present at that conversation and, although recognizing that the argument "grew to a boiling point," denied that appellant made threats to Mrs. Page.

Obviously the jury disbelieved appellant's denial of guilt and his alibi, and the recited evidence was sufficient to sustain the jury's finding that appellant was guilty of burglary and stealing. State v. Gridley, Mo., 353 S.W.2d 705, 706 [1, 2].

■■■ Appellant did not file a timely motion for new trial but contends that the verdict is "fatally defective, uncertain, indefinite and unresponsive to the charge," and that the judgment "is not in accordance with the verdict (of) the jury assessing appellant's punishment at a total of two years imprisonment."

The transcript shows that "on June 29, 1965, the jury returned the following verdict:

"We, the jury find the defendant guilty of burglary and assess his punishment at two (2) years in the Missouri State Penitentiary.

/s/ Harold L. Porter
Foreman

"We, the jury, find the defendant guilty of stealing in conjunction with burglary and assess his punishment at two (2) years in the Missouri State Penitentiary.

/s/ Harold L. Porter
Foreman

"We further recommend, if it is within the law, that the two sentences above run concurrently.

/s/ Harold L. Porter
Foreman"

And the judgment, after reciting appearances, including that of appellant and his lawyer, and allocution, proceeds:

"IT IS THEREFORE, sentenced, ordered and adjudged by the court that the

said defendant, in accordance with the verdict of the jury aforesaid, be confined in the Department of Corrections of the State of Missouri for the period of two (2) years on the burglary charge and for a period of two (2) years in the Department of Corrections of the State of Missouri on the stealing in conjunction with burglary charge, or be confined in the Department of Corrections of the State of Missouri for a total period of four (4) years; * * *."

Appellant argues that the verdict finding appellant guilty only of burglary is not responsive and precise because it does not specify the degree of burglary, the elements of burglary in the second degree, nor refer to the charge of burglary in the second degree.

A verdict must be responsive to the issues submitted, State v. Hinton, 299 Mo. 507, 253 S.W. 722, 723 [2], and it " 'must be certain, positive, and free from all ambiguity. It must convey on its face a definite and precise meaning and must show just what the jury intended. * * *' " State v. Rowe, 142 Mo. 439, 44 S.W. 266. This verdict does not contain an express finding of guilt of second degree burglary, but it is not erroneous because upon this record its meaning is not in any doubt. The record shows an information which charged appellant with but one type of burglary, burglary in the second degree; the evidence supports such a charge and the instructions properly submitted that charge. Reference to those matters shows beyond all doubt that appellant was charged, tried, and convicted of a burglary which could be only in the second degree, and the only question for the jury was whether appellant was guilty or not guilty of the burglary so charged and described. The jury found him guilty and assessed a punishment authorized by statute. Under such circumstances, recitals of "as charged in the information" or of the elements of the crime, although desirable, are not essential to a general verdict, State v. Saussele, Mo., 265 S.W.2d 290, 294 [5], and this verdict is thus sufficient to sustain the judgment of conviction of burglary in the second degree. State v. Webb, Mo., 382 S.W.2d 601, 605 [7]; State v. Mitts, Mo., 347 S.W.2d 677, 680 [3]; State v. Brewer, Mo., 338 S.W.2d 863, 867 [3]; State v. Villinger, Mo., 237 S.W.2d 132, 135 [6]; State v. Perry, Mo., 233 S.W.2d 717, 720 [3–5].

Appellant refers to the third paragraph of the verdict and argues that the judgment, although reciting that it is in accordance with the verdict, is not so because it imposes consecutive two-year sentences for a total of four-years' imprisonment rather than concurrent sentences of two years intended by the jury.

When a person is prosecuted and convicted for both burglary and stealing, he shall be punished for the stealing in addition to the punishment for burglary; and the jury, although possessed of alternatives or discretion "as to the kind or extent of punishment to be inflicted," Criminal Rule 27.02, V.A.M.R., is not authorized to specify whether such punishments shall run consecutively or concurrently, that function being specifically a duty of the court. Section 560.110, supra. Thus, that portion of this verdict which would recommend concurrent sentences is just that, i. e., a recommendation; it is purely advisory, and is not binding upon the court.

Those matters for which no assignment of error is required have been examined as required by Criminal Rules 28.02 and 28.08, V.A.M.R. As previously stated, the information is sufficient and is in proper form; the verdict is responsive to the issues and assesses punishment within legal limits, and the judgment is in accordance with the verdict and the law. Appellant was duly arraigned and allocution was granted. In addition, he had the benefit of counsel of his own choosing throughout

his trial, upon allocution, and upon this appeal.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.