**STATE of Missouri, Respondent,**

v.

**John C. CHEATHAM, Appellant.**

No. 54671.

Supreme Court of Missouri,
Division No. 1.

Oct. 12, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Milton Litvak, Errol D. Taylor, St. Joseph, for appellant.

WELBORN, Commissioner.

Appeal from ten-year sentence for robbery in the first degree with a deadly weapon.

At approximately 9:00 P.M. on February 6, 1968, three armed persons, wearing ski masks over their heads, entered Beaty's Grocery at 19th and Jule in St. Joseph and announced a holdup. The manager of the liquor department, Mr. Seippel, two check-out clerks and two stock clerks were ordered to lie on the floor near the front of the store. At the direction of the robbers, Seippel opened a safe from which one of the intruders took four cash drawers and ran out the west door of the store, toward 19th Street. After the cash drawers had been removed, Seippel was forced to open the top part of the safe from which some $3,000 was taken. He was then ordered upstairs to open a safe and did so and was ordered to lie on the floor.

At about that time, St. Joseph police officers, who had been called by an employee who had been outside and had seen the events in the store, arrived at the store. Officer Merrill entered the store by the east door. He saw one robber wearing a ski mask and armed with a small pistol on the west side of the store. That man ran down an aisle to the west. Merrill heard footsteps coming down the steps and saw a shotgun barrel come around the partition between the doorway and the entance to the doorway. Merrill reached around the partition and fired. The robber dropped money and ran back up the stairs and ordered Seippel to go downstairs with him, telling Seippel that unless the police let him out he would shoot Seippel. As the two went toward the door Seippel went on one side of a post and the robber on another and Merrill fired at the robber and hit him. The other robber then ran right in front of Merrill and Merrill fired and hit him. The two robbers fell to the floor and were captured. The one carrying the sawed-off shotgun was identified as Arthur Hunter. The second was identified as Willie Floyd Harris.

A number of police officers came to the store and a search was undertaken for the third robber who had taken the cash drawers and had not been seen since he left the store.

Sometime before 9:30 P.M. a blue Oldsmobile with Leavenworth County (Kansas) license plates was discovered at 19th and Francis, one block from the Beaty store. Inside the auto, officers found a green ski mask and four cash

drawers containing $616. The cash drawers and the money were returned to the store.

Corporal Holmes of the St. Joseph Police Department came to the store with his trained German Shepherd dog, "Smoke." Smoke and the corporal had fourteen weeks of training in the Kansas City Canine Unit in 1963. Corporal Holmes had worked with Smoke since that time. Holmes and Smoke arrived at the store shortly after 9:00 P.M. After about ten minutes at the store, Holmes and the dog went to where the Oldsmobile had been discovered. The dog picked up a track at the car and Holmes followed the dog which he had on a leash. The officer followed the dog across the street through a vacant lot to an alley running north and south between 18th and 19th Streets. They entered the alley about two hundred feet from the Oldsmobile. They went south in the alley, into a yard and around a trash barrel, then back into the alley south four or five blocks to Sylvanie Street. At Sylvanie the dog turned east to 19th Street and at the corner of 19th and Sylvanie appellant John Cheatham was seen by the officer coming around the corner on 19th Street and starting west on Sylvanie. The officer stopped Cheatham and checked him for weapons and found none. He told the officer his name; that he was going to the house of a girl friend who lived "up over the hill someplace" at an address he did not know. He told the officer that he had been "up to the store where all the police was." Cheatham was taken into custody by other officers and conveyed to the police headquarters. After Cheatham entered the patrol car, Holmes took Smoke to where Cheatham had rounded the corner on 19th and tried to track further. "The dog just turned around and came back."

Assistant Chief of Detectives Thomas interrogated Cheatham at police headquarters at around 10:30 P.M. Insofar as Thomas knew, Cheatham had not previously been questioned about the robbery. According to Thomas the statement of Cheatham was substantially as follows:

"I asked Mr. Cheatham what time he come over to St. Joe, got over to St. Joe. He said about 7:30 p. m. I asked him how he come over, and he said he come over in a '61 or '62 blue Buick, two-door, with a man by the name of Frederick Smith. I asked him where they went to here in St. Joe and he said they went to the Legion Club at 17th and Messanie. It was closed. He left Mr. Smith and went to see a girl friend by the name of Marian Jackson, who was supposed to live at 18th and Sylvanie. He went to her home at 18th and Sylvanie. She was not at home. I asked him where he went and he said he went to look for a fellow by the name of Davis, who he had known at one time or another. He was unable to locate him and he said he went to the grocery store at 19th and Jule and went in and bought some potato chips and bologna, left the grocery store, went back to Marian Jackson's home. The door was open but he did not enter. He left there and started to Marian Jackson's mother's home, and he heard the sirens and he walked up that way near 19th and Jule and that's when he saw the police."

Cheatham denied knowing Hunter and Harris.

At the trial, Hunter's wife testified that she had known Cheatham for about two years; that she would consider her husband and Cheatham friends; that at about 6:00 P.M. on February 6, 1968, Cheatham came to the Hunters' house in Leavenworth. He was there about ten minutes. The only conversation she recalled was Cheatham asking the time and her husband's reply: "Man, we have got plenty of time." Hunter and Cheatham left in the Hunters' 1963 blue Oldsmobile bearing Leavenworth County license plates.

The trial of Cheatham produced substantially the evidence outlined above. No evidence was offered by the defendant. On this appeal, the appellant challenges the sufficiency of the state's evidence. Appellant contends that the evidence did not prove his guilt beyond a reasonable doubt

and that the state's circumstantial evidence is not inconsistent with appellant's innocence and is therefore insufficient to support the conviction.

Unquestionably, none of the state's seven eyewitnesses could identify appellant as one of the robbers. One of the checkers did say that she had seen Cheatham in the store some two hours before the robbery. No one was able to describe the clothing worn by the third man who left before the shooting. One witness did describe the one who got the cash drawers as "possibly 5–7 or 5–6, something like that." It is not clear from the transcript just how this description fits appellant. The witnesses were unable to see the face of the third man because he wore a ski mask. No weapon was ever found which was traced to Cheatham. No fingerprint evidence was found on the cash boxes discovered in the Oldsmobile.

Essentially, the circumstances connecting appellant with the offense are that the appellant and one of the robbers who was shot, Hunter, left Hunter's house in Leavenworth at about 6:00 P.M., some three hours prior to the robbery. Appellant was seen in the store some two hours prior to the robbery and was found some six blocks from the store approximately thirty minutes after the robbery.

With not one shred of eyewitness testimony to connect appellant with the robbery, those circumstances, standing alone, would obviously be inadequate to support a conviction of the appellant. The question is whether the evidence that the discovery of appellant in the vicinity as the result of the police dog's tracking from the automobile in which the third participant presumably had placed some of the fruits of the robbery completes a sufficient chain of circumstances to permit the jury to find the guilt of appellant beyond a reasonable doubt.

■ There having been no objection to the testimony of the officer as to the tracking, we are not here concerned with the admissibility of such evidence. State v. Dooms, 280 Mo. 84, 217 S.W. 43, 46–47 [3, 4]. See Terrell v. State, 3 Md.App. 340, 239 A.2d 128; Annotation: "Evidence of Trailing by Dogs in Criminal Cases," 18 A.L.R.3d 1221. However, even if that evidence is given full credence, it at best places the appellant within a block of the scene of the crime and still does not place him at the actual holdup site. Still left to guess and speculation is the conclusion that appellant left the automobile after depositing the ski mask and the cash boxes in the automobile. Association alone does not permit an inference of guilt, State v. Watson, Mo.Sup., 350 S.W.2d 763, 768; nor does presence in the vicinity of the offense. State v. Irby, Mo.Sup., 423 S.W. 2d 800, 803[3–5]; State v. Bunton, Mo. Sup., 453 S.W.2d 949.

■ If the tracking evidence be relied upon to supply the missing link in the chain of circumstances, we are also confronted with the cases which hold that such evidence alone and unsupported is not sufficient to support a conviction. State v. Freyer, 330 Mo. 62, 48 S.W.2d 894, 898 [3, 4]; State v. Long, 336 Mo. 630, 80 S.W.2d 154, 158[1, 2]. See State v. Fields, Mo.Sup., 434 S.W.2d 507, 516[9, 10].

In our opinion the evidence was inadequate to connect the appellant with the offense charged. We cannot say that it would not be reasonably possible for the state to adduce sufficient evidence at another trial and therefore the cause should be reversed and remanded. State v. Patton, Mo.Sup., 308 S.W.2d 641, 644[7–9].

Reversed and remanded.

HOUSER, C., concurs.

HIGGINS, C., not sitting.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.