STATE of Missouri, Respondent,

v.

Robert Bruce MESMER, Appellant.

No. 26053.

Missouri Court of Appeals,
Kansas City District.

Oct. 1, 1973.

Bruce W. Simon, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Defendant appeals from a conviction for burglary second degree and stealing.

At about 4:00 a. m. on August ·11, 1971, deputy Sheriff Baxter was proceeding northbound on Highway 169 near Smithville, Missouri. At that time, he saw an automobile driven by defendant proceeding in the opposite direction. Baxter noticed when the car passed that the back seat was loaded with merchandise of some sort and the rear end of defendant's car appeared unusually low, reflecting a heavy load. There had been a number of burgla-

ries in that general area within a short period just past and there had been a report of an old red automobile seen about the time of some of those burglaries. Inasmuch as defendant's car met that description, Baxter looked back to see the rear license plate so as to check the number and in that manner noticed that there was no license light. Baxter thereupon turned around, followed and stopped the car being driven by defendant. His spotlight was on high beam, and as he walked alongside defendant's car Baxter saw a case of cigarettes on the floor in the rear, and also other items covered with a blanket. Defendant had also gotten out of his automobile, and Baxter could see that defendant's trousers were wet to the knees.

Baxter inquired of defendant whether he had a bill of sale for the cigarettes. Defendant answered that he did not. Baxter then inquired from whom he had bought the cigarettes, to which defendant replied that he had purchased them from a man in St. Joseph and added: "Well, you know, there's probably—A man has to make money to get along on." At that point Baxter put defendant under arrest "for investigation of possession of stolen merchandise."

About this time Police Chief Ross, whom Baxter had radioed for assistance, arrived at the scene. Baxter reached into the automobile, broke open a carton of cigarettes, and got the stamp number on one of the packages. Chief Ross compared that number with the number stamped on a package of cigarettes in his pocket which he had purchased at Big V Super Market, located less than two miles away. The officers verified that the number on both packages was the same, from which they apparently inferred that the cigarettes in the back of defendant's car had also come from the Big V Market. This inference was faulty, since the number was that of an area wholesaler, not the number assigned to any specific retail store. However, an additional reason for suspecting that these cigarettes came from the Big V Market was that this store was located

near a marsh, and not only defendant, but also the two passengers in his automobile were wet to the knees.

Baxter kept defendant and his two companions in custody at the location of the car, while Ross drove to the Big V Market to check whether any burglary had occurred. As he approached that market he could hear the burglary alarm ringing, although the alarm had been silent when he had last patrolled that area at 3:00 a. m. Ross inspected the building and found that a hole had been cut in the rear wall of the building. An examination of the marshy area behind the building revealed tracks leading across the marsh into a cemetery.

Ross then returned to the place where the car and the three occupants were being detained, and all three were placed under formal arrest and taken to the Clay County jail. Deputy Sheriff Hanson, who by this time had joined Baxter and Ross, took charge of defendant's car which was towed to a nearby filling station. There the car was locked up until 6:00 a. m., when Hanson returned to inventory the contents of the car, including items which were located in the trunk. Those contents included 333 cartons of cigarettes; 18 packages of meat, with "Big Value United Super Market" labels on them; two packages of meat with the name "Justus" written on them; a pistol, a rope ladder and an assortment of tools.

The manager of the Big V Super Market testified that an inventory taken at the store shortly after this incident revealed that a large quantity of cigarettes were missing (in excess of 200 cartons), and he identified the packages of meat found in defendant's car as coming from his market. He also identified the packages marked "Justus" as being meat specially wrapped for delivery to a customer of the store by that name.

I

Defendant's first point assigned as error is that the evidence was insufficient to sus-

tain a conviction. That point is without merit.

■ Where a burglary is shown, the defendant's unexplained possession of the stolen goods within a reasonably short period of time thereafter is a sufficient basis upon which a jury may infer his guilt both as to burglary and theft. State v. Sallee, 436 S.W.2d 246 (Mo.1969); State v. Robb, 439 S.W.2d 510 (Mo.1969); State v. Clark, 438 S.W.2d 277 (Mo.1969); State v. Lira, 372 S.W.2d 80 (Mo.1963).

■ Defendant challenges the application of that well-settled rule to the facts of this case on the ground that he was not in the exclusive possession of the stolen merchandise, but rather the other two passengers in the automobile shared the possession so that any one of the three could have been responsible for the presence of those items in the car. One complete answer to that argument lies in Baxter's testimony that at the initial interrogation defendant stated that he had purchased the case of cigarettes open to view on the back floor of the car from someone in St. Joe. That statement by defendant amounted to a claim of exclusive possession of items later proved to have been stolen and is inconsistent with a denial now of responsibility by him for their presence in the automobile. The jury was therefore entitled to believe that the possession of the stolen merchandise was attributable directly and peculiarly to the defendant.

■ Moreover, the principle of law here under consideration does not require that the possession by the defendant be separate from all others, and it is sufficient that defendant have joint possession with one or more other parties provided that there be at least some additional facts connecting the defendant with the offense. State v. Webb, 382 S.W.2d 601 (Mo.1964). For a detailed discussion of the similar rule applicable in drug possession cases, see State v. Funk, 490 S.W.2d 354 (Mo. App.1973). There are ample additional facts implicating defendant to satisfy that requirement in this case. Aside from anything else, his trousers were wet to the knee, which taken together with the tracks through the marsh, was strong evidence of his participation in the burglary.

Cases cited by defendant have been considered, but they are factually dissimilar to the present case and therefore not in point.

II

Defendant's second and third points complain that the evidence seized from his car were obtained as a result of an illegal search and seizure and that his motion to suppress that evidence therefore should have been granted. This argument is untenable.

■ Deputy Baxter unquestionably was authorized to stop defendant's car at least for the purpose of a brief detention. The distinction, for this purpose, between "detention" and "arrest" is developed in State v. Rankin, 477 S.W.2d 72 (Mo.1972). See also Scurlock, "Basic Principles of the Administration of Criminal Justice with Particular Reference to Missouri Law", 41 UMKC L.Rev. 167, l.c. 172–3 and 175–6. A stopping and temporary detention under circumstances virtually identical to those here was sustained in State v. Edmonds, 462 S.W.2d 782 (Mo.1971).

■ Having justifiably stopped defendant's car, Baxter then was able to observe items in plain view, which together with the totality of the circumstances existing, gave him proper cause both to arrest and also to make a search incidental thereto. State v. Miller, 485 S.W.2d 435 (Mo.1972); State v. Hohensee, 473 S.W.2d 379 (Mo. 1971); State v. Whitnah, 493 S.W.2d 32 (Mo.App.1973).

■ It must be noted, however, that the right to arrest in this situation is a matter

of only collateral interest, since the real question is whether the officer had a right to make a search. The law is abundantly clear that an automobile in a situation as the one here can be searched independently of any right of arrest, the key requirement being only that the officer making the search have probable cause to believe that the car contains articles that the officer is entitled to seize. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Brown, 476 S.W.2d 519 (Mo.1972); State v. Hornbeck, 492 S.W.2d 802 (Mo.1973); State v. Hohensee, 473 S.W.2d 379 (Mo.1971); State v. Edmonds, 462 S.W.2d 782 (Mo.1971). In the present case the officers had adequate reason to believe that defendant's automobile had stolen goods on the back seat and on the rear floor, based upon: (1) recent burglaries in the area; (2) defendant's car meeting the description of an old, red car reportedly seen in the vicinity of previous burglaries; (3) the car being unusually low in back, reflecting a heavy load, and with a suspiciously large amount of cigarettes open to plain view on the rear floor; (4) unsatisfactory answers having been given to questions as to the source of the cigarettes; (5) defendant and his companions all being wet to the knees at a place in close proximity to a supermarket which bordered on a swamp, and (6) this situation occurring at 4:00 a. m.

■ A somewhat unusual feature of the present case is that the officers delayed in making a formal charge and arrest for burglary and theft until after Ross had driven to the Big V Super Market and had verified that a burglary of that store had in fact occurred. However, this delay of from twenty to forty minutes cannot have effect of rendering either the arrest or the search of the automobile illegal. The reasonableness of holding the automobile and its occupants for this short period of time was conceded by defendant's counsel in oral argument before this Court. As to the effect in general on arrests by this type of delay, see Scurlock, "Arrest in Missouri", 29 UMKC L.Rev. 117, l.c. 127. In any event, irrespective of the validity of the arrest, the officers had sufficient probable cause to make a search even before Ross investigated the Big V Super Market, and they had even more probable cause after that investigation had been completed. Defendant and his companions were in no way prejudiced because a search of the entire car was postponed until after Ross had investigated to verify that a burglary had in fact occurred.

■ Nor can this search and seizure be invalidated by reason of postponing the opening of the car trunk until the car had been towed to the filling station where it was locked up until an inventory could be conveniently taken. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Hornbeck, 492 S.W.2d 802 (Mo.1973); State v. Smith, 462 S.W.2d 425 (Mo.1970).

Defendant cites the cases of State v. Witherspoon, 460 S.W.2d 281 (Mo.1970) and State v. Meeks, 467 S.W.2d 65 (Mo. banc 1971) in support of his contention that the evidence in this case was obtained illegally. Those cases stand only for the proposition that the facts there presented did not constitute probable cause for a search. Those factual situations were completely dissimilar from the case at hand, The Meeks decision was distinguished on that basis in State v. Whitnah, 493 S.W.2d 32 (Mo.App.1973), and the same distinction obtains here.

### III

■ Defendant contends next that the trial court erred in refusing to grant a mistrial because of certain remarks made by the prosecuting attorney in closing argument. The portion of the argument to which defendant refers concerns the prosecutor's discussion of the large number of

cigarettes found in the car, with respect to which the prosecutor then commented as follows: "Now, you figure he's smoking all that? You figure he's buying it to smoke? You figure he's got a deal somewhere? What's a guy going to do with all these? He's going to sell them. He steals for a living."

Defendant's counsel objected to the last comment, and the court sustained the objection and instructed the jury to disregard the comment in question. However, the court overruled defendant's motion for a mistrial on this matter.

The granting of a mistrial is a drastic remedy which is to be used sparingly. Action in this regard is peculiarly within the discretion of the trial court, and the exercise of that discretion will not be disturbed absent clear abuse. State v. Phelps, 478 S.W.2d 304 (Mo.1972); State v. Whitnah, 493 S.W.2d 32 (Mo.App.1973). No abuse of discretion appears here.

IV

Defendant's final contention is that the court should not have given instruction No. 5 which was to the effect that all persons are equally guilty who act knowingly together to commit an offense. Defendant is not entitled to be heard on this point, for the reason that his brief violates Rule 83.05(a), V.A.M.R., which requires that every challenged instruction must be set forth in the argument portion of the brief.

In any, event, defendant's objection is not well taken and the instruction is proper under the facts of this case. Even were this not so, any error in the giving of this instruction would be non-prejudicial. State v. Arthur, 57 S.W.2d 1061 (Mo. 1933).

The judgment is affirmed.

All concur.