**STATE of Missouri, Respondent,**

v.

**Robert Leon HERINGTON, Appellant.**

**No. KCD 27019.**

Missouri Court of Appeals,
Kansas City District.

March 3, 1975.

Miner, Martin & Speiser, Richard E. Martin, St. Joseph, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., PRITCHARD, C. J., and TURNAGE, J.

TURNAGE, Judge.

Defendant appeals his conviction and sentence of imprisonment for a period of four years assessed by a jury for obtaining money by false representation in violation of § 561.450 RSMo 1969, V.A.M.S.

The unfortunate victim of this scheme, perhaps unwittingly portraying the words of P. T. Barnum, was an elderly resident of St. Joseph, Missouri, who will be referred to herein as the victim.

On March 30, 1972, the victim was at his home, where he apparently lived alone, when he received a telephone call from a man who represented himself to be an official of the bank in St. Joseph where the victim maintained a savings account. The caller informed the victim he thought one of the girls in the bank was dishonest and had taken some money from the victim's account. He solicited the aid of the victim in tracking down this thievery by requesting the victim to come to the bank and withdraw $3,500.00 from his account and take it home, and later an official of the bank would come to the home and pick up the money and take it back to the bank.

Following this instruction, the victim went to his bank, withdrew $3,500.00 in $100.00 bills from his savings account and,

later that day, took the money to his home. The bank had been alerted to the existence of a scheme with the above described characteristics, and had contacted the police department. The name of the victim became known to the bank and was in turn relayed to the police department, but this information came after the victim had already withdrawn his money.

In response to this information, two officers of the St. Joseph Police Department drove by the victim's home in time to see a man, who they later identified as the defendant, enter the victim's home. In a few minutes the same man emerged. The man left hurriedly and went alongside the victim's house to an alley and proceeded down the alley to a street where he entered an automobile and drove off. The police officers were unable to stop the defendant at this time because of heavy traffic, but did broadcast an alert to other units in the St. Joseph Department to be on the lookout for this automobile. A short time later, two officers spotted an automobile matching the description broadcast at the Holiday Inn and followed this car to Smith's Standard Service where the car stopped. The car was carrying two men, one of whom was later identified as the defendant. These officers contacted the original officers who had spotted the defendant and, while the first two officers were en route to Smith's Standard Service, the defendant was seen to enter the service station and go into an area described as a "storage" area. In this area were stored batteries on a rack.

Upon arrival of the first two officers, the defendant and his companion were placed under arrest. On taking the defendant's property from him at the police station, he was found to be carrying four $100.00 bills and other currency, totaling $512.00.

Later, on the same day, an employee of Smith's Standard Service found a $100.00 bill on top of a row of batteries in the storage area of the station. Apparently undecided as to the applicability of the aphorism that possession is nine points of the law, he took the bill home with him, but on the following morning decided to call the police department and turn it in to them. Still later, another employee of Smith's Standard Service noticed one battery out of line in a row of batteries in the storage area, and upon removing the battery, found seventeen $100.00 bills. None of the $100.00 bills found at the station could be positively identified as having come from the victim since there was no record of the serial numbers on the bills turned over by the victim.

At trial the victim positively identified the defendant as the man who came to his house and to whom he gave his money. There was evidence the defendant was not connected in any way with the bank where the victim kept his money, and, of course, the victim's money was never re-deposited in his account by the defendant or the bank.

After these incidents, the victim gave a written report to the police department in which he stated he had received three or four telephone calls, and at the time the defendant came to his house he was actually talking on the phone with a person representing himself to be a bank official, and in fact gave the phone to the defendant so he could talk with the person on the phone. In his trial testimony, the victim did not testify the defendant talked with anyone on the phone when he came for the money.

■ The defendant raises four points on this appeal, the first of which concerns the invalidity of the information charging the defendant with the commission of this crime because he was not charged by indictment as required by the Fifth Amendment to the United States Constitution. This point requires but scant attention since this argument has been repeatedly ruled adversely to the defendant by the Supreme Court of Missouri, the latest case being Beeman v. State, 502 S.W.2d 254 (Mo.1973). See also State v. Coleman, 460

S.W.2d 719 (Mo.banc 1970). This point is ruled against the defendant.

■■■ Defendant next complains of the admission of testimony by the victim in which he related the representations and instructions which he received by telephone. The defendant claims these statements are inadmissible because they constitute hearsay. The answer to defendant's argument is simply that the testimony complained of was relevant and admissible, not to prove the truth or falsity of the caller's representations, but rather to show that the representations were in fact made and formed the basis for subsequent actions on the part of the victim. It is true the falsity of the caller's representations was a material element in the State's case, however, that element was proved by other evidence. As stated in Miller v. Brunson Const. Co., 250 S.W.2d 958 (Mo.1952):

> " 'Where, regardless of the truth or the falsity of a statment, the fact that it has been made is relevant, the hearsay rule does not apply, but the statement may be shown. Evidence as to the making of such statement is not secondary but primary, for the statement itself may constitute a fact in issue, or be circumstantially relevant as the existence of such a fact.' "

See also 31A C.J.S. Evidence § 329, pp. 645, 646, and 29 Am.Jur.2d Evidence, § 497, p. 555. This point is likewise ruled against the defendant.

■■■ The defendant next contends the trial court erred in not permitting defendant's counsel to inspect a police report containing statements made by the victim. After the victim and the detective to whom the statement was given had testified without being asked by defendant's counsel concerning any statements made to the police department, defendant's counsel inquired of the court as to the existence of a statement. The State advised the trial court such a statement existed and gave a copy of this statement to the trial judge. The court examined the statement and advised defendant's counsel there was an inconsistency between the statement given to the police and the victim's in-court testimony concerning the defendant talking on the telephone to the man who called the victim concerning the scheme. The court refused to allow defendant's counsel to read the statement. That statement is before this court and certainly bears out the trial court's description to defendant's counsel. The trial court fully advised defendant's counsel of what he would have to do by way of laying the foundation before the inconsistency could be shown. However, counsel decided not to recall the victim in order to lay the proper foundation, nor to recall the detective. This was admitted by counsel in oral argument to probably constitute trial strategy. It is fundamental that inconsistent statements may not be shown without first laying the proper foundation by asking the witness concerning the making of such statments. State v. Clough, 327 Mo. 700, 38 S.W.2d 36 (1931). Since counsel elected not to lay the proper foundation, there was no way the prior inconsistent statement of the victim could be properly admitted.

■ Since this trial occurred prior to the adoption of the new rules of criminal discovery there was no compulsion to give counsel a copy. State v. Aubuchon, 381 S.W.2d 807 (Mo.1964).

■ The statement was not used by the State for any purpose, nor was the statement referred to in evidence. Further, the inconsistency was a minor one which related wholly to a collateral matter. Even if the inconsistency were fully shown and explained to the jury, it would not affect the identification of the defendant by the victim nor his testimony that the defendant was the one who actually came to his house and obtained the money. In short, the inconsistency was not only minor but was not material to guilt or to punishment.

In such instances it has been held not to be error to refuse to allow the defense to examine a statement. See State v. Spica, 389 S.W.2d 35, 51 (Mo.1965) and State v. Johnson, 454 S.W.2d 27, 30 (Mo.1970).

The only basis upon which this court could consider this refusal of the trial court to allow defendant to examine the statement would be to conclude that such refusal rendered defendant's trial fundamentally unfair. State v. Aubuchon, *supra*. In view of the nature of the inconsistency and the failure of defendant's counsel to elect to lay a foundation in order to show the inconsistency, it cannot be said that defendant's trial was rendered fundamentally unfair.

Defendant's final claim of error concerns the giving of the State's verdict directing instruction. Defendant claims he was charged in the information with committing the act alone, but states the instruction told the jury all persons are equally guilty who act together with a common intent in the commission of an offense. Defendant claims this submitted the issue of others in addition to the defendant being involved. This submitted an element not supported by the evidence, according to the defendant.

There is no doubt the proposition of law submitted by the instruction is correct. State v. Goodman, 482 S.W.2d 490 (Mo.1972); State v. Reed, 453 S.W.2d 946 (Mo.1970).

There was evidence from which the jury could have found there were in fact two people involved in this scheme, so this instruction did not submit an issue unsupported by evidence. In addition, the reference to others being involved was gratuitous. State v. Mesmer, 501 S.W.2d 192 (Mo.App.1973); State v. Arthur, 57 S.W.2d 1061 (Mo.1933). Thus, there was no error in giving this instruction.

Finding no error, the judgment is affirmed.

All concur.