**STATE of Missouri, Respondent,**

v.

**Marvin E. MILLER, Appellant.**

**No. 36481.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

April 27, 1976.

Carr L. Woods, Asst. Public Defender, Bowling Green, for appellant.

James Millan, Pros. Atty., Charles L. Howard, Bowling Green, for respondent.

NORWIN D. HOUSER, Special Judge.

Marvin E. Miller, convicted by a jury of burglary, second degree, and stealing, and sentenced to concurrent periods of two years for each offense, has appealed on the ground that there was no evidence placing appellant at or near the scene of the crimes at or near the time of the crimes, or that appellant had possession of, dominion over, knowledge of, or profited from, the stolen property.

We reverse the judgment of conviction for insufficiency of the State's evidence, which follows: Sometime during the afternoon of December 4, 1973 appellant took several coonskins to the place of business owned and operated by Willard Magee in Eolia, Pike County for the purpose of selling them. In addition to the fur business Magee bought and sold ginseng root. The root business occupied the front part of the building. The fur operation was conducted in the rear. To get to the fur area it was necessary to pass through the root area. When appellant went through the root area on his way to the rear large quantities of

ginseng root were open to view. Appellant walked "near where the ginseng was." Mrs. Magee was sorting the various kinds of ginseng roots. Some of the roots were enclosed in clear plastic bags; some in cloth bags; some were lying on the floor in bulk. Next morning, between 7 and 7:30, one of Magee's employees discovered that a window of the room housing the ginseng root had been broken. The screen was cut, torn and hanging down. A door next to the window was standing open. At least 205 pounds of ginseng root, worth $66 to $72 per pound, were missing. Magee notified other dealers in the area of the theft. On Monday, December 10, Magee received a telephone call from one Bauer, a ginseng root dealer at Smithboro, Illinois, who stated that "they" had been at his place on Sunday and sold him some ginseng roots; that "they" had come back on December 10 and sold him some more. Bauer called Magee again on December 11, reporting further sales. On these occasions "they" sold Bauer small quantities of roots, 2½ or 4½ pounds each time. Magee called local Sheriff Willeford, who went to Bauer Fur Company and inspected the 1967 Chevrolet van in which the sellers had arrived. Looking through a window of the van the sheriff saw plastic bags with ginseng roots in them. The sheriff talked to appellant, who answered "Yes" to the question whether he had come to Bauer Fur Company with the "other people" in the van. The others were Charles, Abel, and Eddy Miller, brothers of appellant, and four girls. The van, recently purchased, was the property either of Charles, Charles' wife, or both of them. Charles was the driver of the van. All eight were arrested by Sheriff Willeford. Charles Miller signed a waiver of search warrant. The sheriff searched the van, seized the bags of ginseng roots and later turned them over to Sheriff Jenkins of Pike County. Fern Burks positively identified three unbleached muslin sacks (seized during the search) containing ginseng roots as sacks made by her on her Singer sewing machine at the request of her husband, a dealer in ginseng roots. Burks had sold these sacks of roots to Magee during the

fall of 1973. These three sacks and several other sacks introduced in evidence were among those missing following the theft at Magee's place of business. Smithboro, Illinois is located 100–120 miles from Eolia, Missouri.

Appellant did not testify or adduce any evidence.

When as here the evidence of an accused's agency in connection with a crime is entirely circumstantial the facts and circumstances relied on to establish guilt must not only be consistent one with another and consistent with the hypothesis of guilt, but also they must be irreconcilable and inconsistent with accused's innocence, and must so satisfactorily and clearly point to his guilt as to exclude every reasonable hypothesis of innocence. *State v. Thomas*, 452 S.W.2d 160, 162 (Mo.1970); *State v. Morse*, 515 S.W.2d 608, 610 (Mo.App.1974).

That someone committed a burglary (the corpus delicti) was clearly established, but to fasten criminal agency on appellant a submissible case must be found in these facts: (1) appellant was on the premises the day before the burglary occurred, at which time he had an opportunity to observe the existence and whereabouts of the ginseng roots; (2) appellant was riding as a passenger with seven other persons in a van in which some of the stolen roots were found, 5 days later and 100–120 miles distant from the scene of the crimes. These facts do not make a submissible case of burglary and stealing. Lacking is evidence of the approximate time of the breaking and entering; that appellant or one or more of his brothers was seen at or near the scene of the crimes at or near the time of the breaking and entering, or some other evidence that appellant participated in the breaking and entering and removal of the roots as a principal, or aided and abetted others in the commission of the crimes; that appellant had guilty knowledge of the burglary and stealing; that appellant had possession, dominion over or control of the stolen property; that the ginseng roots were actually in the van at the time appellant was riding in the van; that appellant knew the roots

were in the van and knew they were stolen property; that appellant accompanied the other seven persons in the van with the object and purpose of disposing of stolen property; that he participated in the sale of the roots or accepted some of the proceeds of the sales of the roots. None of the foregoing was established in this case. Appellant made no incriminating statement connecting him with the crimes; no contradictory statements to the officers; no effort to hide his true name and identity, and he did not attempt to flee.

Obviously, at some time the stolen property was placed in the Chevrolet van, but we may not infer from the fact that it showed up there on December 9 that it was placed in the van at the scene of the crimes on December 5, or that appellant placed it there or that he participated in the break-in and removal of the property and its transportation in the van from Eolia to Smithboro. For all that appears the property could have been stolen by others without the knowledge or participation of appellant or his brothers, and acquired by him or them from the true thief in a wholly innocent transaction. That appellant was at the scene of the crimes on the previous afternoon and may have then observed the existence and whereabouts of the ginseng roots, or may have had an opportunity to commit the crimes, is not circumstantial evidence sufficient to justify a conviction. *State v. Lane,* 497 S.W.2d 207 (Mo.App.1973), and cases cited l. c. 209[2]. Other cases reversing larceny convictions of persons seen at or near the scene of the crime under suspicious circumstances, in which accused had an opportunity to commit the offense, are cited in *State v. Irby,* 423 S.W.2d 800, 803 (Mo. 1968). Irby holds what we reiterate in this case, namely, that something more than mere presence at the scene of a crime must be shown; that it is necessary that accused shall have associated himself with the venture, affirmatively participated in the crime, forwarded the effort, or consciously shared in the act. In *State v. Cheatham,* 458 S.W.2d 336 (Mo.1970), a robbery case, appellant left the house in company with one of the robbers three hours before the robbery. He was seen in the store that was robbed two hours before the robbery, and was found six blocks from the store thirty minutes after the robbery. In reversing the conviction the court said, 458 S.W.2d l. c. 339, "With not one shred of eyewitness testimony to connect appellant with the robbery, those circumstances, standing alone, would obviously be inadequate to support a conviction of the appellant."

The circumstances of this case do give rise to suspicion, especially in view of the close relationship between appellant and Charles Miller, the driver of the van, and the two other brothers riding in the van, but neither Bauer nor any of the Millers testified and there is no evidence from any other source as to the identity of the person or persons who sold the roots to Bauer. The jury may have inferred that Charles Miller, as owner and driver of the van and apparently the moving spirit, was knowingly in possession of stolen goods, and that it was he who sold the roots to Bauer Fur Company. The jury may have made the further inference that appellant was guilty by reason of his association with his brother Charles, but in *State v. Cheatham,* supra, 458 S.W.2d l. c. 339[2], and *State v. Watson,* 350 S.W.2d 763, 766[1] (Mo.1961), the Supreme Court eschewed an inference of guilt from association alone, and in *State v. Belcher,* 136 Mo. 135, 37 S.W. 800 (1896), reversed a conviction where it was clear that accused was convicted because of his association with his brother and the bad reputation of his family. "Strong suspicions are not sufficient to convict a person of a crime under our system of jurisprudence. It is necessary that there be some evidence, however slight, which would directly link appellant to the commission of the crime of which he is charged." *State v. Eye,* 492 S.W.2d 166, 168 (Mo.App.1973). And see *State v. Morse,* supra, for the proposition that "a verdict based on suspicion, conjecture or on surmise, however strong, is not sufficient to permit a criminal conviction." 515 S.W.2d l. c. 610.

The State contends that link is found in appellant's possession of the stolen proper-

ty; that there is sufficient possession to create a presumption that appellant was the burglar and thief since he was one of a number of persons found "in joint possession of stolen property." The State relies on the cases of *State v. Oliver*, 355 Mo. 173, 195 S.W.2d 484 (1946); *State v. Mesmer*, 501 S.W.2d 192 (Mo.App.1973); *State v. Cobb*, 444 S.W.2d 408 (Mo. banc 1969), and *State v. Farmer*, 490 S.W.2d 72 (Mo.1973).

*State v. Farmer* supports appellant's, not the State's, position. Farmer was found in the back seat of an automobile driven by Owens, in which one Stanart was occupying the right front seat. On the floor of the back seat officers found a stolen cash register containing $81 in bills and other valuables. Farmer's conviction of burglary and stealing the cash register was reversed on appeal. The court noted the same deficiencies in the proof we have pointed out in this case. Commenting that Farmer was not the owner or driver of the automobile and that there was no evidence that he exercised any control over it the court held Farmer not in exclusive possession of the cash register; that there was no more than a joint possession with Owens, owner of the vehicle, and perhaps with Stanart; and that "[w]here there is only a joint possession of recently stolen property our recent affirmances have all contained something additional which ties defendant to the burglary and stealing." Three examples were given. *State v. Cobb* was distinguished on the basis that Cobb was apprehended leaving the scene of the crime in a rapidly accelerating car, with the lights off and the police close behind; that in *Cobb* defendant "was shown to have been at the scene of the crime and had an opportunity to commit it in addition to being a passenger in the car transporting the stolen property," so that the *Cobb* case "does not rest entirely on the fact of the stolen property being found in the same car as the defendant passenger." 490 S.W.2d 1. c. 74. *Oliver* and *Mesmer* are to be distinguished on the facts. In them there was other incriminating evidence pointing to defendant's guilt in addition to possession of recently stolen property. The

rule is that where "the possession [of recently stolen property] relied on to convict the defendant [of burglary and stealing or robbery] is joint with another, there must, at least, be some other evidence more than mere possession connecting defendant with the offense." *State v. Gonzales*, 533 S.W.2d 268, 272[6] (Mo.App.1976). (Our brackets.) In *Mesmer* the court, at 501 S.W.2d 1. c. 195[3], alluded to the necessity of there being "at least some additional facts connecting the defendant with the offense," citing *State v. Webb*, 382 S.W.2d 601 (Mo.1964). That other evidence, referred to in *Webb*, may be "evidence that defendant, with conscious knowledge of the fact that the property was stolen, exercised dominion and control over it." 382 S.W.2d 1. c. 604[6]. Or it may be evidence of an incriminating nature, such as the dust found in the clothing of the four persons apprehended near the scene of the crime in *State v. Heitman*, 473 S.W.2d 722 (Mo.1971), denominated the "common denominator" which, together with other incriminating circumstances, "permit[ted] the inference that all four acted knowingly together in the joint and common enterprise * * *." The required additional facts tying and connecting appellant with the burglary and stealing are absent here. There is no showing that appellant knew the property was stolen; no proof that he exercised dominion and control over it, and no evidence of any common scheme, conspiracy or joint commission of the burglary and stealing by the eight persons arrested, so as to make the possession of one the possession of all (as in *State v. Heitman*, supra).

■ The judgment of conviction is reversed and the sentence set aside. Appellant asks for discharge but is not entitled to outright discharge as a matter of right "where the appellate court determines as a matter of law that the evidence is insufficient to support the judgment of conviction; in such case, unless it appears from the record that it would not be reasonably possible for the state to adduce sufficient evidence at another trial, the court should reverse the judgment and remand the cause for a new trial. [Citing 9 Missouri cases.]"

State v. Patton, 308 S.W.2d 641 (Mo. banc 1958), followed recently in State v. Wade, 531 S.W.2d 726, 730[4] (Mo. banc 1976). See also State v. Sullivan, 454 S.W.2d 515 (Mo. 1970), and State v. Gonzales, 533 S.W.2d, supra, l. c. 274. It not appearing from this record that it would not be reasonably possible for the state to adduce sufficient additional evidence at another trial to make a submissible case, the cause is remanded for a new trial. If sufficient evidence cannot be adduced the information should be dismissed and defendant discharged.

ALDEN A. STOCKARD, Special Judge, concurs.

SMITH, C. J., concurs in separate opinion.

SMITH, Chief Judge (concurring).

I concur in the principal opinion because I believe it to be in accord with the law of this State as enunciated by the Supreme Court. I express here my grave reservations that an appellate court which finds insufficient evidence to make a criminal case has authority to remand for new trial to give the State an opportunity to present additional evidence. To me that is a violation of the rule against double jeopardy. Our decision here, in essence, holds that the trial court erred in not directing a verdict of acquittal. If the trial court had done what we say it should have done, double jeopardy would apply. If the State is unable to present sufficient evidence to establish defendant's guilt, it should not have a second chance to do so whether the insufficiency is determined by the jury, trial judge, or appellate court. Obviously a different situation pertains where the reversal is upon the basis of error during the trial of the case. However, as the majority opinion holds, the position stated in this concurrence is contrary to the decisions of the Supreme Court of this State, so I must reluctantly concur in the disposition made.