In re K. S. R., a minor, and S. L. M., a minor, Appellants.

Nos. 39020, 39021.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 10, 1979.

Lester W. Duggan, Jr., St. Charles, for appellants.

Thomas A. Palumbo, Asst. Pros. Atty., St. Charles, for respondent/Juvenile Court.

ALDEN A. STOCKARD, Special Judge.

These two consolidated appeals are from orders of the juvenile court entered on February 10, 1977 finding that appellants, S.L.M. and K.S.R., each came within the jurisdiction of the juvenile court under the provisions of § 211.031.1(2), in that each did steal five rings from the Venture Department Store located in St. Charles County.

On October 22, 1976, two juvenile girls, S.L.M., age 12, and K.S.R., age 14, entered the Venture Store accompanied by the mother and sister of S.L.M. The two juveniles went to the jewelry department to look at rings, and each girl selected five rings, each ring having a sale price of $1.88, from a "self-serving type of device." Each ring had a paper tag which identified it as a ring offered for sale by the Venture Store. Each girl placed the five rings, with the tag attached, on the index finger of her left hand. They testified that they then went in search of the mother of S.L.M. to find out which rings she preferred and to obtain permission to purchase three of the rings, and that they had no intention to steal any of the rings. K.S.R. had approximately nine dollars with her and S.L.M. had twenty dollars.

The girls went first to the "domestic department" where rugs, pillows, blankets, curtains and like merchandise were sold, but the mother of S.L.M. was not there. While in that department they looked briefly at sewing kits, and S.L.M. showed K.S.R. a pillow that a cousin had received as a wedding present. At all times while the girls were in the domestic department the rings were on the index finger of each girl with the rings and tags clearly visible. They then went to the phonograph record department, and were there about two minutes. While there the girls removed the rings from their fingers and held them in their hands. S.L.M. testified that she did so because the "butterfly" ring was cutting her finger. They then went to the ladies restroom because S.L.M. had what K.S.R. referred to as an emergency; she was menstruating. The restroom was inside the store area and was for the convenience of

the customers. It was adjoining a snack-bar, and to get to either the restroom or snack-bar it was necessary to pass some cash registers. Although there were two cash registers in the jewelry department, it was not required that purchased jewelry be paid for there. The customer had the option to pay for the jewelry at the jewelry department, or to carry the items (perhaps while shopping for items in other departments) to the cash registers in the main isle near the front door. There were no signs or notices that merchandise not yet paid for should not be taken into the restroom.

When the girls were in the domestic department they were observed by Rosalie Mason, a store detective who was in a "security blind." She saw that they each had "several rings" on the index finger of her left hand, and that the rings were "tagged with our tags." Mrs. Mason notified a Miss Smith who "continued surveillance from the floor." She then left the security blind and the two continued "surveillance together." Mrs. Mason testified that she observed the girls go to the record department where they "took the rings from their fingers and placed them in the left palm hand." She stated that both girls had "butterfly sleeves" which were "large flowing sleeves;" that they had shoulder strap purses, and "had the rings in their left hand * * * and underneath the sleeve of their top." She stated that she (who was following *behind* the girls) could not see the rings when the girls passed the cash registers, and she added that the reason was that while in the record department "they palmed them in their hands."[1] At no time did the girls remove the tags or place the rings in a pocket (they were wearing jeans with pockets) or in their purse. As soon as the girls entered the restroom Mrs. Mason and Miss Smith immediately followed, and then when they were *facing* the girls the rings were in full view. Mrs. Mason and Miss Smith identified themselves and told the girls they wanted "to talk about some merchandise that they failed to pay for,"

and the girls were taken to the security office. After some evasion on the part of Mrs. Mason she admitted that she searched the girls but found nothing in their clothing or their purse that belonged to the Venture Store.

At the security office Mrs. Mason told the girls that "All we [are] interested in is getting our merchandise back," but we note that Mrs. Mason then had possession of the rings. The girls asked that the mother of S.L.M. be called, but it was approximately a half hour before she was paged and then only after an extended interrogation of the girls and threats that they would "go to jail" and that "there would be a thousand dollar fine," and that the mother of S.L.M. would not be called "until [they] admitted to it."

For some unexplained reason the two petitions to the juvenile court were not filed until sixty-one days after the incident, and the hearing was held twenty-one days thereafter.

█ Each girl was charged with a violation of § 560.156 RSMo 1969 (now repealed) in that she did "steal, take and carry away the merchandise of Venture Department Store * * * to-wit: five (5) rings with the intent then and there to steal and to permanently deprive the owner of the use thereof, and to convert the same to her own use, and without the consent of said owner * * *." In order for the juvenile court to assume jurisdiction over either juvenile it is required that proof of the alleged offense be established beyond a reasonable doubt. *In the Matter of Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). See also, *In re Fisher*, 468 S.W.2d 198 (Mo.1971).

The statute with which the juveniles were charged with having violated defines the term "steal" as follows: "to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing or retaining possession of his property."

---

1. We attribute no significance to this conclusionary remark. The evidence is that each girl placed the rings in her hand, and it does not justify the comment as to "palming" with its sinister implication.

In this case there is no evidence from which it can reasonably be inferred that the juveniles *wrongfully* took the rings. The rings were taken from a "self-serving type of device," and thereafter the rings were not taken to any place where pursuant to the store policy it was not permissible to do so before making payment. The rings were never placed in a pocket or a purse. Neither were they placed in a shopping bag as in *State v. Ahern,* 546 S.W.2d 20 (Mo.App.1976), nor in a satchel as in *State v. Van,* 543 S.W.2d 827 (Mo.App.1976), in order to facilitate their removal from the store. Also, the girls did not attempt to leave the store with the rings. See *State v. Ahern,* supra. The paper tag on each ring which identified the ring as being an item offered for sale by the Venture store was never removed. Although Mrs. Mason stated she could not see the rings when the girls were on the way to the restroom, she was *behind* the girls, and they had the rings in their hand, the only place items as small as a ring could be carried without intentionally concealing them. The only reasonable inference, even from Mrs. Mason's testimony, is that the rings were visible to those who wanted to see them with the tags attached at all times, and there is no evidence from which it reasonably could be inferred that there was an intentional concealment with intent to steal. This is a circumstantial evidence case in that a dominion over the rings in a manner inconsistent with the rights of the owner must be inferred from the facts, but that inference must be reasonable. In order to be a reasonable inference authorizing a finding beyond a reasonable doubt that the charged offense was committed, it must be "consistent with the guilt of [the person charged] and inconsistent with any reasonable theory of his innocence." *State v. Lasley,* 583 S.W.2d 511 (Mo. banc 1979). The evidence in this case falls far short of this minimum standard.

If it could be said that in this case the evidence establishes beyond a reasonable doubt that these two girls were guilty of stealing the rings, then every customer of the Venture store who exercises the option of selecting various items from different departments and carrying those first selected with him while selecting the other items is also guilty of stealing. When the customer exercises that option the dominion exercised over the property is with the consent of the owner of the property, and it cannot constitute a wrongful taking.

The judgments are reversed and each cause is remanded for the entry of appropriate orders.

DOWD, P. J., and SNYDER, J., concur.