**STATE of Missouri, Respondent,**

v.

**Kevin PRIER, Appellant.**

**No. 63474.**

Supreme Court of Missouri,
En Banc.

June 8, 1982.

David Robards, Public Defender, Bob Parrish, Joplin, for appellant.

William J. Fleischaker, Pros. Atty., Joplin, for respondent.

WELLIVER, Judge.

Appellant Kevin Prier was charged by grand jury indictment with second degree burglary, § 569.170, RSMo 1978,[1] and found guilty by a Jasper County jury of first degree trespass, § 569.140.[2] He was sentenced to serve six months in the county jail. The Missouri Court of Appeals, Southern District, affirmed the conviction, and we ordered the case transferred pursuant to Rule 83.03. We reverse because the evidence was insufficient to support the jury's verdict.

We review this case as if it were on original appeal. Rule 83.09.

Mrs. Norma Aldenderfer testified that she and her husband saw appellant nearby the Ozark Athletic Supply (hereinafter Ozark Athletic) at about 5 a. m. September 18, 1979. The Aldenderfers had just entered their cafe and were preparing for the 7 a. m. opening. Mrs. Aldenderfer testified

---

1. Section 569.170 provides:
   1. A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein.
   2. Burglary in the second degree is a class C felony.
All statutory references henceforth are to RSMo 1978.

2. Section 569.140 provides:
   1. A person commits the crime of trespass in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property.
   2. A person does not commit the crime of trespass in the first degree by entering or remaining upon real property unless the real property is fenced or otherwise enclosed in a manner designed to exclude intruders or as to which notice against trespass is given by:
   (1) Actual communication to the actor; or
   (2) Posting in a manner reasonably likely to come to the attention of intruders.
   3. Trespass in the first degree is a class B misdemeanor.

that upon their arrival she heard a loud noise that sounded like metal striking against metal. She looked across the alley at Ozark Athletic but saw nothing at first. Five minutes later she saw appellant in the alley near Ozark Athletic. She saw him walk to an adjacent garage, try the handle on the door three or four times, walk over and look in the back door of Ozark Athletic, and walk to the corner of the alley looking toward Main Street, the street on which Ozark Athletic fronted. Mrs. Aldenderfer also saw appellant bend down behind an air conditioner unit, which was four feet square and three feet high, that was located near the back of the store. Mrs. Aldenderfer's husband called the police, and when the police arrived, appellant began to walk away slowly.

A window above Ozark Athletic's back door, which faced the alley, had been broken sometime between 6 p. m. September 17, when the proprietor closed the business for the day, and 5 a. m. September 18, when the police arrived and arrested appellant. The window was twelve to fifteen inches square and was located seven or more feet above the ground. Jim Onstot, the proprietor, did not notice when he closed September 17 whether the window was broken out or intact. The window was located above a plywood shelf and was thus difficult to see.

Unfinished trophies were stored on the shelf above the door and below the window. Five of those trophies were missing from the shelf at 5 a. m. September 18 and were found in the alley behind Ozark Athletic approximately twenty-five to thirty-five feet from the window. They were lined up in front of the door of the garage adjacent to the business. Onstot, who is two inches taller than appellant, testified that he could not reach the window when he stood on the ground. Neither Onstot nor the police officer who investigated the incident at the scene saw any object except a fifty gallon topless metal trash container upon which appellant could have climbed in order to reach the trophies with his hands. The trash container would have had to be moved from its storage bin to the spot underneath the window, turned upside down, and then

moved back, and Onstot testified that he saw no evidence that that had been done. Neither Onstot nor the police officer observed any implements with which appellant could have reached the trophies while standing on the ground.

Mrs. Aldenderfer testified that she did not see appellant handle any trophies and that she could have seen them had he done so. She did not see him carry a stick or anything with which to break the window, and she did not see him carry anything on which to stand. She did not see him break any glass or reach high to enable himself to reach through the broken window. She said she never heard the sound of breaking glass.

Appellant and his friend, Charles Serzy, both testified that appellant left Serzy's house after 4:30 a. m. September 18. Serzy had loaned his tape recorder to appellant, who planned to use it in school. The tape recorder was found at the scene lying on the ground a few feet from the trophies. Appellant testified that he was walking home along a route that ran behind Ozark Athletic when he saw the trophies, stopped to look at them, and investigated briefly to learn why they were sitting in the alley at 5 a. m. He denied breaking any windows or taking the trophies from Ozark Athletic.

██ In cases such as this in which the conviction is grounded upon purely circumstantial evidence, the facts and circumstances upon which the state relies must be consistent with each other, consistent with guilt, and inconsistent with any reasonable theory of innocence, and they must exclude every reasonable hypothesis of the defendant's innocence, *State v. Biddle*, 599 S.W.2d 182, 192 (Mo. banc 1980); *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *State v. Burnley*, 480 S.W.2d 881, 882 (Mo.1972), although they need not conclusively estabish guilt or demonstrate the impossibility of innocence, *State v. Franco*, 544 S.W.2d at 534. "Mere suspicion, however strong, will not supply the place of evidence when life or liberty is

at stake." *State v. Bunton*, 453 S.W.2d 949, 953 (Mo.1970). The burden is on the state to prove guilt; the defendant does not bear the burden of producing evidence of a theory of innocence. *State v. Parker*, 509 S.W.2d 67, 72 (Mo.1974).

The facts that a defendant was at the scene of a crime and had an opportunity to commit it are not sufficient to justify a conviction. *State v. Allen*, 420 S.W.2d 330, 333 (Mo.1967). The state must show that the accused had some substantial nexus with the commission of the crime. *State v. Rogers*, 380 S.W.2d 398, 400 (Mo.1964). Presence at the scene of a crime and flight therefrom are insufficient to support a conviction, *State v. Arnold*, 566 S.W.2d 185, 189 (Mo. banc 1978), unless there is no reasonable explanation for the flight, *State v. Burnley*, 480 S.W.2d at 882; *State v. Castaldi*, 386 S.W.2d 392, 395 (Mo.1965). "Where two equally valid inferences can be drawn from the same evidence, the evidence does not establish guilt beyond a reasonable doubt." *State v. Black*, 611 S.W.2d 236, 240 (Mo.App.1980).

The circumstantial evidence upon which the conviction was based in this case does not support the jury's finding that appellant was guilty of first degree trespass. Given these facts, appellant could have committed a crime under § 569.-140(1) [3] only by "knowingly enter[ing] unlawfully . . . a building or inhabitable structure." It cannot be said unequivocally that the facts and circumstances adduced in this case are inconsistent with appellant's innocence or that they exclude every reasonable hypothesis of his innocence. A reasonable person might readily believe that the events occurred as appellant described them—that appellant, walking through the alley on his way home, found the trophies leaning against the door of the garage adjacent to Ozark Athletic. The evidence is consistent with the possibility that someone

other than appellant broke the window and removed the trophies from the store. No evidence tends to prove that the window was broken at approximately 5 a. m. September 18; it may well have been broken anytime after 6 p. m. the previous evening, when the store was closed. Mrs. Aldenderfer's testimony was that the loud noise she heard around 5 a. m. was the sound of metal striking metal, not the sound of breaking glass. The evidence showed that appellant could not have reached the window from the ground. He would have had to stand on something or employ some type of instrument with which to reach through the window. No such implements were found in the vicinity, and only the trash barrel, which testimony showed had not been moved, was available for appellant to stand on. The record contains no evidence that appellant's fingerprints were on any of the trophies or pieces of glass from the broken window.

Mrs. Aldenderfer saw appellant walking away from the area at the time the police were arriving. There is a sound basis for questioning whether on the facts of this case slow walking alone can be considered "flight." In any event, flight is sufficient to support a conviction only in the absence of a reasonable explanation therefor, and appellant's explanation was objectively reasonable. Appellant, who was seventeen years old at the time of the incident, had never before been charged with or accused of any type of crime. When the police arrived with their red lights flashing, appellant was understandably "scared . . . an awful lot."

The state relies on *State v. Boone*, 490 S.W.2d 318 (Mo.App.1973), as authority for its contention that the evidence adduced in this case is sufficient to sustain the verdict. The circumstantial evidence in *Boone*, however, presented a much clearer case of guilt than do the facts in this case.[4] It suffices

---

3. See note 2 *supra* for the full text of § 569.140.

4. The appellant in *Boone* was convicted of second degree burglary and of stealing from a private residence. When the victims in *Boone* returned to their home, they saw two cars

parked in their driveway. The trunk of one of the cars, which was backed up to the open garage door, was open. The victims saw appellant hiding behind a brick wall that extended

to say that the facts in the case at bar are just as consistent with a reasonable hypothesis of appellant's innocence as they are with guilt.

The conviction is reversed.

DONNELLY, C. J., SEILER and BARDGETT, JJ., and STOCKARD, Special Judge, concur.

MORGAN, J., dissents in separate dissenting opinion filed.

HIGGINS, J., dissents and concurs in separate dissenting opinion of MORGAN, J.

RENDLEN, J., not sitting.

MORGAN, Judge, dissenting.

I respectfully dissent with the belief that the facts as outlined in the principal opinion evidence a classic circumstantial evidence case, buttressed by the further fact that appellant actually was seen by witnesses in the midst of the crime scene.

The conviction for "first degree trespass," and the judgment entered thereon, should be affirmed.

out from the garage. He looked around the side of the wall three times before he stepped from behind the wall, walked up to the victims, and attempted to explain his presence. He was wearing cotton gloves, clothing not required for warmth in September. The victims also saw another man run around the side of the house and push appellant back behind the brick wall, and they saw a woman attempting to hide in one of the two cars parked in the driveway. The victims told appellant to wait until they could check inside their house, but appellant kept walking, got into one of the cars, and drove away. The other man drove the other car away. A typewriter and money were missing from inside the house. A pay envelope and a plastic case containing typewriter correction ribbons, both of which had been on top of the typewriter, were found in the driveway behind the spot where the two cars had been parked. The court in *Boone* held that these facts were inconsistent with appellant's innocence and consistent with his guilt.