STATE of Missouri,
Plaintiff-Respondent,

v.

Johnnie JONES, Defendant-Appellant.

No. 44500.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 18, 1983.

Motion for Rehearing/Transfer to
Supreme Court Denied March 17, 1983.

Application to Transfer Denied
April 26, 1983.

GAERTNER, Judge.

Appellant was found guilty at a jury trial of the offense of murder in the second degree, § 565.004, RSMo 1978, and, pursuant to the jury's assessment of punishment, sentenced to 28 years in the Department of Corrections. On appeal he asserts two grounds for reversal: (1) that the circumstantial evidence was insufficient to prove he committed the murder, and (2) error in overruling his motion to quash the indictment on the grounds the Grand Jury selection process in the City of St. Louis violated appellant's Fourteenth Amendment right of equal protection by discriminating against blacks.

As to the second point, appellant's motion to quash the indictment was consolidated in the circuit court with over 100 similar motions. The consolidated motions were overruled by the circuit court and this ruling was affirmed by the Supreme Court of Missouri in State v. Baker, 636 S.W.2d 902 (Mo. banc 1982).

Appellant's challenge to the sufficiency of the evidence necessitates a review thereof. In testing its sufficiency, facts and appropriate inferences intelligently drawn therefrom must be assessed in the light most favorable to the State and to the verdict of the jury. State v. Bolder, 635 S.W.2d 673, 679 (Mo. banc 1982). When, as here, the State's case is based upon circumstantial evidence, the facts and circumstances relied upon to establish guilt must be consistent with each other and with the

hypothesis of defendant's guilt. They must be also inconsistent with and exclude every reasonable hypothesis of defendant's innocence. But the circumstances need not be absolutely conclusive of guilt or demonstrate the impossibility of innocence and the mere existence of other possible hypotheses is not enough to remove the case from the jury. *State v. Prier,* 634 S.W.2d 197, 199 (Mo. banc 1982).

■ The victim of the homicide was appellant's mother, Beatrice Lane, who operated Bea's Food Shop in the City of St. Louis. On September 4, 1980, about 9:45 a.m. Troy Phillips stopped by the food shop and spoke with Mrs. Lane for ten or fifteen minutes. A lady and a little girl were in the food shop when Phillips arrived but they soon left. There was no one else in the food shop when Phillips left. Mrs. Lane's living quarters were located in the same building above the shop. When Phillips left the store Mrs. Lane was alone, sitting at the counter reading a newspaper. As he left, Phillips noticed a mailman making his deliveries down the street. Reverend John Walker was sitting on his front porch across the street and five houses down from Bea's Food Shop. Eight to ten minutes before he saw the mailman enter the store, he saw appellant leave the front steps of the store. Appellant, carrying some clothes in his hands, spoke to Rev. Walker as he walked past. Between the time appellant left and the time the mailman entered, Walker observed no one else enter or leave the store. The mailman and two young boys entered the store together about 10:01 a.m. Mrs. Lane was seated with her head resting on her arms on the counter top. When she did not respond, he looked closely and noticed blood on her neck and called the police.

Some time after 10:00 a.m. appellant entered a dry cleaners located about three blocks from his mother's home. He paid for some cleaning with a $20 bill, left the cleaners while the proprietor was making change but returned for it almost immediately. By the time he walked back to the food shop, two police cars were parked near the store. The rotating lights on the cars were turned off and no ambulance was at the scene. Appellant was observed a quarter of a block from the store. He was running and shouting over and over, "What happened to my Mama?" He threw the clothing he was carrying at a police officer who struggled with him at the door to prevent his entry.

The cause of Mrs. Lane's death was a single bullet fired at close range into the back of the right side of her head. A .25 caliber bullet was removed from the body and a .25 caliber shell casing was found in a display rack in the store close to where her body was found. The murder weapon was never discovered. A .25 caliber automatic pistol had been recently loaned to appellant by his landlord.[1] Appellant's girlfriend testified she saw this pistol at appellant's home the night of September 3, 1980, but it was gone when she looked for it after the killing.

Further investigation disclosed that two checks were missing from the normal rotation of the checkbook of Bea's Food Shop. One of these had been given by appellant to his landlord. This check, made payable to the landlord was drawn in the amount of $400 and purported to have been signed by the deceased. The second check was found in the pocket of a pair of appellant's trousers which were in a laundry hamper. It was dated September 2, 1980 and made payable to appellant in the amount of $1,200. It also purported to have been signed by the deceased. A handwriting expert testified that the writing on both of these checks did not compare with identified samples of the deceased's handwriting, but rather was the handwriting of appellant.

A few weeks before the murder appellant told his girlfriend the food shop would soon be his. On two occasions shortly before the murder, the victim told her sister, Alberta White, that if anything happened to her she should have the police pick up Johnnie (ap-

1. Appellant did not live with his mother in the residence above the food shop. Two months before the incident he had rented living quarters in Illinois where he was employed.

pellant). Another aunt of appellant testified that after the incident he instructed her not to tell the police anything.

While there were several doors to the store, the police determined that all doors except the front entrance were secure and had not been opened. The back door led to the rear, fenced yard. That door was not locked, but it was left ajar and wired partially open from the inside by a coat hanger. The victim apparently latched this door in this manner to get fresh air. A very large dog was in the back yard. The door was still wired from the inside when the police arrived. Because it had been raining and the back yard was muddy, the police looked for footprints but found none in the back yard nor were any found in the inside leading from the back door. The police also found the drawer of the cash register next to the victim's body partially open with money visible therein.

This detailed recitation of the evidence clearly refutes appellant's argument that the state accomplished no more than a showing of his presence near the scene and a suspicion that he may have committed the crime. In addition to his presence, the state showed his possession of a gun similar to the murder weapon, his earlier claim the food shop would soon be his, his forgery of checks drawn against the food store account. The victim's state of mind just days before her death reflected fear for her life at the hands of appellant and he cautioned a family member not to tell the police anything. The jury could reasonably infer that appellant's display of concern for his mother's welfare, premature as it was in the absence of an ambulance or other indication of injury, plus his somewhat unusual conduct of temporarily leaving the dry cleaners without change for his $20, was conduct calculated to divert suspicion from himself. The presence of money readily observable in the partially open cash drawer dispels robbery as a motive for the shooting. Moreover, the evidence concerning the absence of any use of the entrance to the store except by appellant between the time the deceased talked with witness Phillips and the time her body was discovered by the mailman and the children, plus the absence of other easily accessible means of entry to or egress from the premises is a circumstance, standing alone, which points inalterably to the guilt of appellant. Viewed in totality, the circumstances clearly exceed a mere showing of appellant's presence at the time of the homicide. They are consistent with his guilt. They are inconsistent with his innocence to a far greater degree than circumstances held sufficient to support convictions in such cases as *State v. Franco,* 544 S.W.2d 533 (Mo. banc 1976); *State v. Williams,* 515 S.W.2d 544 (Mo.1974) and *State v. Maxie,* 513 S.W.2d 338 (Mo.1974).

The trial court did not err in overruling appellant's motion for judgment of acquittal. The judgment is affirmed.

SNYDER, P.J., and DOWD, J., concur.