**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Wasim AZIZ, Defendant-Appellant.**

**No. WD 33195.**

Missouri Court of Appeals,
Western District.

Feb. 8, 1983.

Joseph H. Locascio, Sp. Asst. Public Defender, Kansas City, for defendant-appellant.

John Ashcroft, Atty. Gen., Jay A. Daugherty, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

Defendant appeals his conviction by a jury of second degree burglary and sentence of one year. The determinative issue, properly preserved, is the sufficiency of the evidence to support his conviction upon the state's submission and theory of circumstantial evidence.

In the early morning hours of April 9, 1981, several police officers were dispatched to the Ben Casey Sundry store in Kansas City. The officers observed that the store's front door was ajar and the padlock was missing. Suspecting that the burglar or burglars might still be inside the store, one of the policemen radioed for a "canine officer" to assist in a search of the building. The other officer peered through a window and observed a black male standing inside the store. The man looked back at the officer, and the two shared eye contact for thirty seconds. The officer later positively identified the man he saw inside as Monir Aziz. The lights were on in the back of the store where Monir stood. The officer saw only Monir in the store and saw only one man leave the store through a door in the back. No evidence places the defendant, Wasim Aziz, in the store.

The Ben Casey Sundry store, Blackstone Hotel, and Pro Automatic Transmission Company all are located in the same building, Ben Casey's being the southernmost business, with the hotel north of it, and Pro Automatic occupying the northernmost space. A hallway connects Ben Casey's and the hotel, but access to the hallway from Ben Casey's is blocked by a "glass encased" door, which the owner of Ben Casey's kept locked from the inside of his store. The "back door" to Ben Casey's was not available for public egress and ingress. Facing north as one would if one were to leave Ben Casey's through the back door, there are two doors in the hallway between the sundry store and the hotel—the one on the right leads into a small restroom available to the hotel's patrons. The one on the left was a swinging hall door that led down some stairs to the basement of the Blackstone Hotel. There were no signs or any type of obstruction that would warn against public access to the basement. At one end of the basement there was a hole in the ceiling, described as an "old coal chute." By climbing up through the hole one could gain access to the Pro Automatic Transmission Co. office.

Very soon after the officer observed Monir in the Ben Casey store Officer Aufner arrived on the scene with his police dog, Fritz. They entered Ben Casey's through the front door, and Officer Aufner shouted the standard warning, "Police officer, come out or I am going to turn the dog loose." When the only response was noise from the back of the store, Fritz was set loose. The officer followed him to the back door, which was still locked but contained a jagged hole in the glass sufficiently large for Fritz and Aufner to crawl through.

Aufner followed Fritz through the door and into the hall, then to the left down the stairs into the basement, where he yelled, "Police, hold it." Proceeding after the barking dog across the basement, Officer Aufner observed two pairs of legs scrambling up through the hole that led into the transmission shop. He grabbed one leg of each pair, but when he lost his grip on one concentrated his efforts on the other. Wasim Aziz was pulled down out of the hole, wrestled to the floor, and arrested. Monir Aziz was soon thereafter discovered in a truck in the transmission shop, where he had been tracked by the dog.

Fingerprints lifted from liquor bottles, which had been collected in bags and sacks left near Ben Casey's front door, all were identified as belonging to Monir Aziz. No prints belonging to Wasim were identified in the store. Wasim Aziz offered no evidence in his defense. Monir Aziz did not testify.

■ The state's case was based entirely on circumstantial evidence. Its theory, as submitted in the instructions and explicated in closing argument, was that since Wasim, who shared the uncommon last name of Aziz with the implicated burglar, Monir, had been apprehended while fleeing with Monir in the vicinity of the burglary, then Wasim must have aided Monir in the perpetration of the burglary. That theory, since it does look entirely to circumstantial evidence for support, must be based on facts and circumstances consistent with each other and with the hypothesis of defendant's guilt, inconsistent with his innocence, and excluding every reasonable hypothesis of innocence. State v. Franco, 544 S.W.2d 533 (Mo. banc 1976), cert. denied, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). The state failed to adduce substantial evidence on which the jury could have based a verdict of guilty beyond a reasonable doubt, and the judgment is reversed. State v. Prier, 634 S.W.2d 197 (Mo. banc 1982); State v. Brown, 462 S.W.2d 766 (Mo.1971); State v. Cheatham, 458 S.W.2d 336 (Mo. 1970); State v. Irby, 423 S.W.2d 800 (Mo. 1968); State v. Dudley, 617 S.W.2d 637 (Mo. App.1981); State v. Miller, 536 S.W.2d 524 (Mo.App.1976).

■ In analyzing sufficiency of evidence cases, courts look for recurring indicia of guilt, such as presence at the scene and opportunity to commit the offense, flight, possession of contraband or weapons, close association with a known perpetrator, and active or affirmative participation in the offense. It is uniformly held that proof of one factor, save of course active or affirmative participation, is insufficient evidence on which to base a guilty verdict. State v. Irby, 423 S.W.2d at 803 (presence in the vicinity plus opportunity to commit the

crime not enough to sustain state's burden); State v. Cox, 508 S.W.2d 716, 721 (Mo.App. 1974) (while flight is a circumstance to be considered, flight alone is not sufficient to sustain a conviction); State v. Cheatham, 458 S.W.2d at 339 (association alone does not permit inference of guilt). Possession of recently stolen property may create an inference of guilt, but that inference does not overcome an accused's presumption of innocence. State v. Lewis, 482 S.W.2d 436, 437 (Mo.1972).

■ When the state's case rests exclusively on circumstantial evidence, there must be some evidence of active participation in the commission of the crime, although that requirement may be satisfied by reasonable inferences drawn from the evidence. State v. Arnold, 566 S.W.2d 185 (Mo. banc 1978). Even in combination, certain of these factors are said to be insufficient as a matter of law to overcome the defendant's presumption of innocence. State v. Arnold, supra at 189 (presence coupled with opportunity or flight insufficient); State v. Keller, 471 S.W.2d 196, 199 (Mo.1971) (suspicious circumstances plus association over a day later insufficient); State v. Castaldi, 386 S.W.2d 392, 395 (Mo. 1965) (presence, opportunity, suspicious circumstances, perhaps flight); State v. Dudley, 617 S.W.2d at 639 (presence plus flight insufficient). Of course, while the case law is instructive, each case is factually unique and must "stand upon its own facts." Kansas City v. Lane, 391 S.W.2d 955 (Mo.App. 1965).

■ In this case, all the state's evidence showed was presence in the vicinity of the store, flight from the police officer and his dog, and the common surname. No evidence placed Wasim in Ben Casey Sundry, and, in fact, the testimony of the police officer and the fingerprint testimony indicate that he was not there. The first time he was seen was in the basement, legs flailing, trying to escape from the police dog by shinnying up the coal chute. As in Castaldi, defendant's flight can be explained consistent with a reasonable hypothesis of innocence—if Wasim had been in the hallway

to use the restroom or "sleeping it off" in the basement and heard the large German Shepherd coming, natural instinct would explain his flight. Wasim did not explain his presence or why he fled, but it is not incumbent on him to offer a theory of innocence. *State v. Prier,* 634 S.W.2d at 200. The hotel manager testified that he had not given appellant permission to be in the basement the night of the Ben Casey break-in, but he was not on duty in the hotel that night and could not refute the reasonable hypothesis that defendant entered the hallway from the lobby of the hotel to use the restroom.

Nor did defendant have in his possession anything from Ben Casey Sundry, although Monir had a screwdriver from the store on him when he was arrested. Lack of possession of stolen goods is just one factor that distinguishes this case from such cases as *State v. Arnold,* 566 S.W.2d at 185, *State v. Harris,* 602 S.W.2d 840 (Mo.App.1980), and *State v. Fowler,* 558 S.W.2d 366 (Mo.App. 1977).

The state relied heavily on the fact that defendant had the same last name as the implicated burglar, Monir. The state made no attempt, however, to establish what relationship, if any, the two shared. There was a complete dearth of evidence that the two were in each other's company before the break-in, that they were related, or that they even knew each other. In *State v. Miller,* 536 S.W.2d 524 (Mo.App.1976), the court held the evidence was insufficient to support the conviction of a defendant who was apprehended, along with three of his brothers, in a van containing stolen ginseng root. The court, while recognizing that the close relationship between the defendant and his brother, the driver of the van, gave "rise to suspicion," concluded that that suspicion, plus joint possession of the stolen root, was insufficient to support the criminal conviction absent "additional facts tying and connecting appellant with the burglary and stealing." *Id.* at 528.

In *State v. Cheatham,* 458 S.W.2d 336, there was evidence that the defendant had known one of the identified robbers for two years, that defendant left from the robber's Kansas home with the robber three hours before the robbery in St. Joseph, Missouri, that defendant was seen in the victimized store two hours before the robbery and was arrested six blocks from the store thirty minutes after the robbery. Witnesses had established that one of three robbers had fled the store before the other two were captured. Observing, *inter alia,* that neither association nor presence in the vicinity alone would support an inference of guilt, the court reversed defendant's conviction.

In the case at hand there is no evidence establishing any familial relationship, other than that Monir and Wasim shared the last name of Aziz. Nor is there any evidence that the two were together at any time prior to or during perpetration of the burglary—only that both chose the same escape route from the Blackstone Hotel to flee from the pursuing German Shepherd. Under these circumstances the evidence did not exist from which the jury could infer active participation in the crime due to conduct or companionship before or after the crime. *See State v. Arnold,* 566 S.W.2d at 187.

The evidence adduced against defendant failed to establish more than presence in the vicinity of the burglary plus flight, and the flight can reasonably be explained. *See State v. Prier,* 634 S.W.2d at 200. In *State v. Dudley,* 617 S.W.2d 637, this court recently held that where the defendant was observed peering through a broken glass in the door of a store that was in the process of being burgled, making gestures with his hands and moving his mouth, and then ran from a policeman who arrived on the scene and attempted a second escape when the opportunity arose, that the fact of his presence and flight were insufficient for a jury to find him guilty beyond a reasonable doubt. Here there was even less evidence that defendant in some way aided or promoted Monir's break-in at Ben Casey Sundry than was present in *Dudley.* Commonality of last name is not sufficient evidence from which the jury could infer active participation in the crime. The state failed to

adduce evidence to show that defendant had some "substantial nexus" with the crime, *State v. Prier, supra* at 200, and the jury's verdict was based on evidence insufficient to establish defendant's guilt beyond a reasonable doubt.

The judgment of conviction is reversed.

All concur.