STATE of Missouri, Plaintiff-Respondent,

v.

Keith SIMMONS, Defendant-Appellant.

No. 52089.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 17, 1987.

Rozann Moss, Asst. Public Defender, St. Louis, for defendant-appellant.

Daniel J. Bruntrager, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

REINHARD, Judge.

Defendant was found guilty by the court of attempted stealing under $150, a misdemeanor, and was sentenced to fifteen days in jail. Execution of sentence was suspended, and defendant was placed on unsupervised probation for one year. He appeals; we affirm.

Defendant's sole point on appeal is that the state failed to make a submissible case of attempted stealing. He contends:

> The trial court erred by overruling [his] motion for judgment of acquittal at the close of the entire case because the evidence presented was purely circumstantial and insufficient to preclude a reasonable theory of innocence in that the evidence shows only presence, flight, and opportunity to commit the crime, not active participation.

On May 9, 1986, at about 4:00 a.m., police officer Patricia Lane responded to a burglar alarm at Popeye's Famous Fried Chicken restaurant on West Florissant Avenue in St. Louis. Lane was driving a marked police vehicle; the lights were not activated but the radio was "up pretty loud." Upon arrival, Lane saw defendant about 50 feet away from her "walking from the rear of the restaurant at a fast pace." Lane approached defendant because he was "walking fast and sweating and acting nervous...." Lane came within five feet of defendant and told him to stop, drew her weapon, and ordered him to put his hands on the patrol car. Defendant said, "What for, officer? I didn't do anything. What for?" Lane told defendant she was investigating the alarm at Popeye's and asked his name. Defendant then raised both hands straight up above his head, shouted, "Run!," and ran away from Lane.

Lane pursued defendant on foot until she lost sight of him. She then called the police dispatcher and gave a description. Lane returned to the restaurant, and, a few minutes later, other police officers brought defendant to the restaurant where Lane identified him as the person who had run away from her. Lane advised defendant of his constitutional rights. Defendant told her he "didn't do anything" and that "Tony and Donnie Redd did it."

A frozen food storage room was at the rear of the restaurant. Lane observed that the door of the storage room was wide open, the padlocked metal hasp having been broken. There was a grocery cart immediately outside the open door. The cart contained about three cases of raw, frozen chicken.

Lane and the president of the corporation doing business as Popeye's were the only witnesses for the state. Defendant offered no evidence.

This is a classic present-at-the-scene circumstantial evidence case. Although the parties have cited numerous court opinions supporting their respective positions, defendant presenting cases in which a submissible case was not made and the state offering cases in which one was made, we believe the law necessary to resolve this case can be gleaned from *State v. Franco,* 544 S.W.2d 533 (Mo. banc 1976); *State v. Prier,* 634 S.W.2d 197 (Mo. banc 1982); *State v. Arnold,* 566 S.W.2d 185 (Mo. banc 1978); and our case of *State v. Jackson,* 519 S.W.2d 551 (Mo.App.1975).

In *Franco,* the supreme court set forth the standard of review in a circumstantial evidence case.

> First, the facts in evidence and all favorable inferences reasonably to be drawn therefrom must be considered in the

light most favorable to the state and all evidence and inferences to the contrary must be disregarded. Second, ... the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every *reasonable* hypothesis of his innocence. Third, the prevailing circumstantial evidence rule, supra, is realistically tempered in its application since in a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilt, and they need not demonstrate impossibility of innocence; ... the mere existence of other possible hypotheses is not enough to remove the case from the jury.

*Franco,* 544 S.W.2d at 534–35 (citations omitted) (emphasis added).

In *Prier,* the court discussed circumstances similar to some that are present in this case.

> The facts that a defendant was at the scene of a crime and had an opportunity to commit it are not sufficient to justify a conviction. The state must show that the accused had some substantial nexus with the commission of the crime. Presence at the scene of a crime and flight therefrom are insufficient to support a conviction unless there is no reasonable explanation for the flight.

*Prier,* 634 S.W.2d at 200 (citations omitted).

The substantial nexus requirement of *Prier* can be satisfied by showing affirmative participation by the defendant. As the court said in *Arnold:*

> [T]he requirement of "affirmative participation" may be satisfied by inference and the evidence need not directly place the defendant in the act of committing the crime for which he is charged.... It has also been held that presence, companionship and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.... Evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction.

*Arnold,* 566 S.W.2d at 187 (citations omitted).

"Although isolated facts viewed individually may not support more than a suspicion of guilt, a conviction may rest upon accumulated, interdependent facts, no one of which alone may create more than a suspicion of guilt." *Jackson,* 519 S.W.2d at 557 (citations omitted).

Recognizing that circumstantial evidence cases are factually unique, courts resolve sufficiency of the evidence questions in them on a case by case basis. We now analyze the facts of this case in light of the above-cited law.

There was evidence that someone took a substantial step toward appropriating, without consent, the chicken from the frozen food storage room. At about 4:00 a.m., within moments of the sound of the burglar alarm, defendant was seen walking from the immediate area of the crime at the rear of the restaurant at a fast pace, sweating and acting nervous. Confronted by the officer, he yelled, "Run!," and he himself fled. After apprehension, he stated he "didn't do anything" but that "Tony and Donnie Redd did it."

It reasonably can be inferred from the facts that defendant recently had participated in some sweat-producing activity such as breaking into the food storage room and removing the chicken; upon hearing the sound of the burglar alarm or the radio in the police car, he began to depart from the area; confronted by the officer, he warned others involved; and, because he had a consciousness of guilt, he fled from the officer and later named the other participants as the only perpetrators. There is more here than presence, opportunity, and flight.

When all the evidence is viewed in a light most favorable to the state, this record is sufficient to make a case, and the court did not err in overruling defendant's motion for judgment of acquittal.

Judgment affirmed.

SMITH, P.J., and DOWD, J., concur.