STATE of Missouri,
Plaintiff/Respondent,

v.

Lawrence S. CRAGHEAD,
Defendant/Appellant.

No. 55380.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 19, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 25, 1989.

Application to Transfer Denied
Dec. 12, 1989.

---

Charles M. Shaw, St. Louis, for defendant/appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

SATZ, Judge.

Defendant Lawrence Craghead was convicted of manufacturing marijuana, § 195.020 RSMo 1986. He was sentenced to one year imprisonment. He appeals. We affirm.

The term "manufacture", as used in § 195.020 RSMo 1986, "means the production ... of ... a controlled substance," § 195.010(21), RSMo 1986, and the term "production" includes "the ... planting, cultivation, growing or harvesting of ... a controlled substance." § 195.010(30) RSMo 1986. The offense of growing marijuana consists of promoting the growth of the plant and being aware of its character. *State v. Brown*, 750 S.W.2d 715, 717 (Mo. App.1988).

Among his contentions on appeal, defendant contends there was insufficient evidence to show he committed the offense of growing marijuana. This is an issue of submissibility. To resolve the issue, we do not weigh the evidence. We view the evidence and permissible inferences in the light most favorable to the verdict and disregard all contrary evidence and inferences. *State v. Overkamp*, 646 S.W.2d 733, 736 (Mo.1983). We determine whether the evidence, so viewed, was sufficient for reasonable persons to have found defendant guilty as charged. *State v. Porter,*

640 S.W.2d 125, 126 (Mo.1982). In making this determination when the state's case is based on circumstantial evidence, we must consider whether any reasonable hypothesis of innocence exists. *State v. Goddard,* 649 S.W.2d 882, 884 (Mo. banc 1983).

The present record, so viewed, shows that on July 14, 1987 State Trooper Jim Hull and Deputy Sheriff Tom Groves responded to a report that marijuana was growing on a farm in Audrain County. The farm was owned by Larry Holt, Jack Holt and William Mudd. At the farm, Trooper Hull and Deputy Groves found a patch of seventeen marijuana plants. A sump pump in a nearby creek was set up to provide water to the plants. Tubing ran from the pump past the plants, and there was a small hole in the pipe beside each plant. The ground around each plant was cleared and worked up. The officers found a second patch with twenty-six plants. The second patch was irrigated in much the same manner as the first.

During the morning of July 21, 1987, Trooper Hull returned to the farm with Deputy Sheriff Chuck Mayes. They hid in brush close to one of the patches. About 12:30 p.m., they heard a vehicle close to them. Trooper Hull looked up from the brush where he had concealed himself and saw a pickup truck approach and stop. Three people got out of the truck: defendant, Larry Holt and John Haines. Defendant was in the lead. All three were carrying rifles. The three of them walked parallel to the irrigation hose, alongside the marijuana patch. As Holt and Haines walked past the concealed officers, Trooper Hull saw Holt reach down, grab a plant and heard Holt say: "Damn, they're drying up."

Defendant, Holt and Haines walked out of the sight of the officers, and, a few seconds later, Holt and Haines walked back into view. The two of them checked the irrigation system. Holt said the irrigation hose "ain't clogged". When Holt and Haines attempted to start one of the irrigation pumps, Trooper Hull and Deputy Mayes emerged from hiding and arrested them. The officers radioed for assistance to catch defendant.

A manhunt for defendant was started. While searching in a bean field, Deputy Sheriffs Crane and Graham and Sheriff Harry Lee came upon fresh footprints. The three followed the footprints through the bean field and found defendant lying face down in waist high beans. After Deputy Crane read defendant his rights, Crane asked defendant where his gun was. Defendant denied having one.

Defendant was taken to the Audrain County Jail. There he was asked by Deputy Sheriff Stanford: "how long he knew the other two fellows that were with him." Defendant said: "he didn't know what other two people [the deputy] was talking about." Defendant did admit he had been running from a search airplane, but denied any knowledge of the marijuana. The next day, the defendant was bailed out of jail by William Mudd, the same person who bailed out Holt and Haines. The defendant left jail in a car occupied by Holt.

On the issue of submissibility, defendant does not challenge the sufficiency of the evidence to show Holt and Haines were actively engaged in growing marijuana. Rather, defendant contends the state only showed defendant's presence in the marijuana field and his flight from there. Mere presence at the scene of the crime and flight from there, defendant argues, fails to make a submissible case.

Defendant does not specify whether he contends the evidence failed to show he promoted the growth of the marijuana, or it failed to show he was aware of the plant's character, or both. There should be no question the state showed defendant was aware that marijuana was being grown in the field in question. At trial, defendant said: "when I seen that plastic pipe [irrigation pipe], I realized what was going on." Admittedly, there is no direct evidence showing defendant was "growing" the marijuana. There was, however, sufficient circumstantial evidence to support this inference.

To determine whether circumstantial evidence is sufficient to establish guilt, we

necessarily look for operative facts implying guilt. Some of the recurring facts indicating guilt are: presence at the scene and opportunity to commit the offense, flight, possession of contraband and close association with a known perpetrator. *See, e.g., State v. Aziz,* 647 S.W.2d 586, 588 (Mo.App. 1983). But, at times, a combination of certain of these facts have been held insufficient to support guilt, *Id.,* and a short-hand principle has been developed to act as a general guideline explaining some of these holdings. Thus, it has been said:

> Presence of the defendant at the scene of the crime and his flight may be considered as indicia of guilt and will support conviction when coupled with other circumstantial evidence showing active participation in the offense . . . , but mere presence at the scene plus flight therefrom will not sustain the conviction without the evidence of some active participation in the offense. (Citations omitted).

*State v. Dudley,* 617 S.W.2d 637, 639 (Mo.App.1981).

Defendant contends there was no operative fact which supports the inference he "actively participated" in the growing of marijuana; for example, he contends, there was no showing that, when he walked through the marijuana patch, he looked at, inspected, discussed, trimmed or watered the plants. Without this kind of operative fact, he contends, the state fails to make a submissible case. We disagree.

To state the obvious, the recurring operative facts indicating guilt, such as presence at the scene or flight, may have substantially different meanings and, thus, support wholly different inferences, in different circumstances. *State v. Simmons,* 494 S.W.2d 302, 305 (Mo.1973). Consequently, as with most general principles of law, there are exceptions and qualifications. The meaning of circumstantial evidence is fact specific.

Without again detailing the facts here, the state did show defendant was present at the scene. But, the facts showing his presence imply more than defendant strolling through the fields with friends. Out of the entire field, defendant chose to walk alongside the marijuana patch and its irrigation pump. He admitted he knew "what was going on". He was armed. He then fled the scene. But, he fled simply because he heard "a loud noise". He was not sure what the noise was, but he "had a good idea". Such skittishness is not the mark of an innocent.

Defendant not only fled, he concealed himself. And, when found, he responded to questions with a litany of lies. Contrary to the state's evidence, he said: he had no gun; he did not know to whom Deputy Stanford was referring, when the deputy referred to Holt and Haines; he had not been in the marijuana patch; he was jogging through the bean field for his health, got hot and tired and laid down; and, at trial, he said, he was not ahead of Holt and Haines, when the three of them walked parallel to the marijuana field; rather, he said he just followed along. Thus, inferentially, he could not be considered the leader or a look-out. Moreover, he was acquainted with the Holts, helped them plant quite a bit and left the jail on bail in the company of Larry Holt.

In short, the state proved defendant's presence, knowing marijuana was being grown, *see, State v. Nichelson,* 546 S.W.2d 539, 543 (Mo.App.1977), his flight and concealment, *see State v. Simmons, supra* at 305, his litany of lies, *see, State v. Plant,* 694 S.W.2d 751, 754 (Mo.App.1985), *State v. Crespo,* 664 S.W.2d 548, 552 (Mo.App.1983), and his association with those who unquestionably were growing marijuana. *State v. Wells,* 729 S.W.2d 591, 593 (Mo.App.1987), *State v. Simmons, supra* at 305. To us, these are sufficient circumstantial facts to support the submission of the charge of defendant growing marijuana.

Admittedly, at trial, defendant said he fled the scene because he was on probation. But, defendant's trial took place about one year after his arrest, after he reflected on the bizarre explanation he gave at the time of his arrest. This is not to say the state made its case simply by showing defendant to be a liar. It simply demonstrates that the state's direct and circumstantial evi-

dence showing guilt is not weakened by any reasonable explanation showing defendant's innocence.

■ The state's burden of proof turns on "reason." The state need not show defendant's guilt beyond all doubt, just beyond a reasonable doubt; and, when the state's proof is based in part on circumstantial evidence, as here, the state's evidence need not preclude every possible explanation of defendant's innocence, just preclude the reasonable explanations of his innocence. *State v. Rodden,* 728 S.W.2d 212, 213 (Mo. banc 1987). The state met that burden here.

■ Defendant also attacks an evidentiary ruling made by the trial court. In cross-examining some of defendant's character witnesses, the prosecutor asked whether they knew that defendant had filed for bankruptcy and had listed several gambling debts as claims against him. Defendant's objections to these questions were overruled. Defendant contends these rulings were prejudicial error.

Defendant testified, and, during his testimony, he admitted he filed bankruptcy and listed the debts as claims. Any error committed by the court was cured by defendant's admission. *State v. Pruitt,* 756 S.W.2d 201, 203 (Mo.App.1988).

■ Defendant next contends he was prejudiced by the prosecutor's closing argument. During his closing argument, the prosecutor referred to a report which had not been admitted into evidence. The reference was made during the prosecutor's argument about character:

[Prosecutor] Let's get into character. Instruction No. 9 talks about character. The Defendant has introduced several witnesses who say that his reputation for truthfulness is true. [sic] He lied several times to the police when he was arrested. They said his reputation for being a law abiding citizen is good; they've heard nothing bad about him even though marijuana was found growing on his farm *and even though marijuana was found growing on his father's farm—that is a report of that as growing on his father's farm—* (Emphasis added).

[Defense Counsel] Judge, there is no such evidence that anything was found growing on his father's farm.

Court: Sustained.

[Defense Counsel] Nobody has testified to that. I'm going to ask that the jury be admonished to disregard the statement.

Court: The jury will disregard the last comment of the State.

Defendant then moved for a mistrial, and his motion was denied.

As can be seen, the prosecutor made two references to marijuana being grown which would be adverse to defendant's interest: marijuana was found growing on defendant's farm, and marijuana was found growing on his father's farm. Defendant objected only to the second reference. If there were an adverse inference to be drawn from either reference, the former reference, not objected to, would be much more damaging to defendant than the latter. Moreover, the reference to marijuana growing on the farm of defendant's father was made by the prosecutor just this one time. In this context, the trial court's denial of a mistrial was not error.

■ The declaration of a mistrial is a drastic remedy and should be used only in the most extraordinary circumstances. *State v. Sidebottom,* 753 S.W.2d 915, 919–920 (Mo. banc 1988). Here, the trial court sustained defendant's objection and instructed the jury to disregard the reference objected to. The curative instruction was sufficient to avoid prejudice. *State v. Cannady,* 660 S.W.2d 33, 40 (Mo.App.1983).

Defendant also argues the court erred in permitting the prosecutor to argue an adverse inference from defendant's failure to call Larry Holt as a witness. More specifically, defendant contends the court erred in allowing the prosecutor "to comment on the failure of the defendant to produce a co-defendant to testify on behalf of the defendant." As we understand defendant's specific argument, it is based on these assumptions: Holt was a "co-defen-

**666**

dant"; as a co-defendant, Holt would invoke his Fifth Amendment privilege against self-incrimination; thus, Holt would not and could not be compelled to testify; ånd, consequently, he could not be more available to defendant than the state. In support, defendant cites *State v. Hustead,* 615 S.W.2d 556, 560 (Mo.App.1981).

These assumptions, however, are not supported by the record. We must take the record as we find it and so must defendant on appeal. While the record does show Holt was arrested, it does not show Holt subsequently was charged with a crime, that he was asked to testify or that he refused to testify. Without this showing, defendant's argument fails and his reliance on *State v. Hustead, supra,* is misplaced.

Defendant makes several other arguments: (1) the prosecutor, in his opening statement, referred to defendant's witnesses and, thereby, implied defendant had a burden to produce those witnesses; (2) the court improperly refused to strike two venire persons for cause; (3) the court improperly permitted the prosecutor to use three photos taken of defendant at the time of defendant's arrest, even though these photos were not produced prior to trial in response to defendant's motion to produce; and (4) the verdict directing instruction was so vague that it "amounts to a license and roving commission to the jury to find guilt."

We have carefully read these arguments along with the record. These arguments are not persuasive, and we find no useful or precedential value in addressing them in detail. They are denied. Rule 30.25(b).

Judgment affirmed.

SMITH, P.J., and STEPHAN, J., concur.