STATE of Missouri, Respondent,

v.

**Patrick R. CONWAY, Appellant.**

No. WD 41290.

Missouri Court of Appeals, Western District.

March 20, 1990.

Ronald S. Reed (argued), Creath S. Thorne, St. Joseph, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen. (argued), Jefferson City, for respondent.

Before NUGENT, C.J., and CLARK and SHANGLER, JJ.

NUGENT, Chief Judge.

Defendant Patrick R. Conway appeals from his conviction, under § 576.040 [1], of official misconduct. He asserts among other things insufficiency of the evidence to support the verdict of guilty on Count II of the two-count indictment. The jury acquitted him on Count I. We reverse the conviction on Count II.

Count II of the indictment in its relevant parts reads as follows:

The Grand Jurors charge that the defendant in violation of Section 576.040, RSMo, committed the class A misdemeanor of official misconduct ... in that on or about December 1985 or January 1986 ... the defendant, a public servant, acting under color of his office as Clerk of the Buchanan County Commission, knowingly paid over money belonging to Buchanan County, as follows: an undetermined amount of money for the purpose of paying parking ticket fines assessed against Patrick R. Conway by the City of St. Joseph and defendant did so for a purpose other than the specific purpose for which the same was ... collected....

Count I was a substantial duplicate of Count II except that it alleged that that offense occurred "on or about June, July and August, 1986." Before trial, the parties stipulated regarding the specific dates on which the defendant paid the overtime parking fines: June 24, 1986, for Count I, and January 7, 1986, for Count II.

Section 576.040 provides in its pertinent parts as follows:

1. A public servant, in his public capacity or under color of his office or employment, commits the crime of official misconduct if:

. . . .

(4) He is a county clerk ... and knowingly ... pays over any money for any purpose other than the specific purpose for which the same was ... collected....

The undisputed evidence viewed in the light most favorable to the prosecution established the following facts:

As county clerk of Buchanan County, Mr. Conway and the members of his staff collected certain monies for the county, for example, fees for liquor licenses, auctioneers' licenses, notary public commissions, and nurses licenses. The clerk and his staff put the checks and cash thus collected in a cash drawer. They also placed in that drawer collections from the sale of plat books for the county's soil and conservation commission.[2] Deputy clerk

---

1. All sectional citations refer to Missouri Revised Statutes, 1986.

2. Missouri statutes impose no duty upon the county clerk to handle the sale of or to collect and account to the commission for the sale of such plat books. Defendant Conway, whose testimony we may not and do not consider, said that the commission compiles a plat book, sells advertising in it and sells the books to the public. "They *asked us if we would make them* available to the public by having some in our office...." The books sold for $10.00 each.

Elizabeth Hessmeyer, testifying for the prosecution, said that the money in the cash drawer included "money for maps."

Each day a deputy clerk deposited the daily receipts collected for the county into a bank trust account. A deposit slip recorded each such transaction. Each month, the clerk wrote a check on the trust account to the county treasurer for that month's collections. Ms. Hessmeyer testified, however, that she could not always promptly pay over to the treasurer the month's intake because the trust account contained less money than the office had actually collected.[3]

Until an official audit of his office in August, 1986, Mr. Conway and members of his staff occasionally borrowed cash from the cash drawer, using it to buy lunch, operate parking meters and to pay other personal expenses. Ms. Hessmeyer testified that Mr. Conway borrowed money from the cash drawer, sometimes two or three times a month, some months more often, some less often. She said, however, that she never actually saw him do so; he told her. He would say, "Lizzie, I borrowed five dollars out of the drawer. I borrowed ten," or whatever other amount he took. The prosecutor asked her no questions about the defendant's borrowing forty-seven dollars from the drawer in January, 1986.

The prosecution's witnesses testified that usually the borrower would leave an I.O.U. or tell a staff member about the "loan." The six members of Mr. Conway's staff called by the prosecution as well as Mr. Conway all testified that each person who borrowed from the drawer repaid the money, usually within the month.

In January, 1986, the City of St. Joseph threatened Mr. Conway with arrest unless he paid his accumulated parking tickets. By stipulation, the parties agreed that on January 7 he paid the city $47.00 for thirteen parking tickets but that no record exists to indicate whether the payment

came by check or in cash, who made the payment or the source of the $47.00.

The prosecutor's direct examination of the six members of the clerk's staff dealt almost exclusively with events that took place in June and August, 1986. He asked them no questions about the events of January 7. In the entire fifty-five pages of their direct testimony, the word "January" appears only three times.

On June 24, 1986, the city again warned Mr. Conway regarding unpaid parking tickets. At trial, witnesses testified to seeing him remove money from the cash drawer on the day in June that he paid those fines. The stipulation of the parties shows that on June 24 some unidentified person paid $48.00 in fines for eleven parking tickets issued to the defendant, but again no record shows whether by check or in cash or of the source of the money for the payment.

The official "surprise" audit conducted on August 13, 1986, revealed that the clerk's office could not account for $138.05 of its total collections. Mr. Conway eventually paid the shortage from his personal funds. Testimony about the audit came from the county auditor and an outside certified public accountant. Their testimony concerned only the "cash count" in the clerk's office on August 13. They compared the record in the clerk's cash receipts journal for that day with the cash in the office on that day. The prosecutor made no inquiry of them about the cash receipts journal entries in January or about the records of licenses issued or deposits made in the clerk's trust account during that month. Following the audit, the borrowing from the cash drawer stopped.

In late 1986 and early 1987, the St. Joseph police and the Buchanan County grand jury began an investigation of the financial problems in the clerk's office. Detective Steven Houston questioned Mr. Conway in February, 1987, and obtained a

Sixty to eighty dollars in cash from those sales accumulated in the cash drawer.

**3.** After a special audit in August, 1986, the clerk's office stopped depositing its collections

into its own bank account and instead began turning over its daily collections to the county treasurer at the end of each work day.

signed statement from him that included the following admissions:

> In late 1985, or early 1986, I heard there was an arrest warrant out for me for parking tickets and that I owed about sixty dollars. So I took about forty dollars, I'm not sure as to the exact amount, from the cash drawer and I went to city hall and paid them around fifty dollars. I had about ten dollars of my own with me. I then went home and got a check and cashed it and then put the money back in. That was the only time I used money from the drawer to pay parking tickets.

At trial, the special prosecutor asked Detective Houston whether defendant Conway had said anything about taking money out of the cash drawer that belonged to the soil and conservation commission for some plat books. Detective Houston said that he did not remember it, that the defendant may have said that. He added, "I know I subsequently investigated that particular matter."

Mr. Conway claims that the trial court erred in denying his motions for acquittal because among other things the state adduced insufficient evidence to support a verdict of guilty on Count II. He argues specifically that the record contains neither direct nor circumstantial evidence showing that he took any county money in December, 1985, or January, 1986, to pay his parking tickets. He also asserts that the only evidence upon which the state relied to obtain his conviction, his extrajudicial statement to a police detective, cannot sustain a conviction.

■ On review, we accept as true the evidence supporting the verdict, together with all reasonable inferences drawn from it and disregard all evidence and inferences to the contrary. *State v. O'Connell*, 726 S.W.2d 742, 744 (Mo.1987) (en banc). A verdict of guilty must rest on proof beyond a reasonable doubt of each element of the crime charged against the defendant. *Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 3106–07, 92 L.Ed.2d 460 (1986); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970); *State v.*

*Murray*, 744 S.W.2d 762, 771 (Mo.1988) (en banc); *State v. Smith*, 485 S.W.2d 461, 464 (Mo.App.1972). "Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt ... the judgment should be affirmed." *Rose*, 478 U.S. at 579, 106 S.Ct. at 3106. But the defendant comes to trial cloaked with a presumption of innocence, *Taylor v. Kentucky*, 436 U.S. 478, 483–86, 98 S.Ct. 1930, 1933–35, 56 L.Ed.2d 468 (1978), and the prosecutor bears the burden of proof to show the defendant's guilt beyond a reasonable doubt. *State v. Prier*, 634 S.W.2d 197, 200 (Mo.1982) (en banc). Where the jury can draw either of two equally valid inferences from the same evidence, one probative of guilt, the other not, the evidence does not establish guilt beyond a reasonable doubt. *State v. Black*, 611 S.W.2d 236, 240 (Mo.App.1980). In a case based on circumstantial evidence, the same rule applies. *State v. Prier*, 634 S.W.2d at 200; *In re K.S.R.*, 585 S.W.2d 208, 210 (Mo.App.1979).

■ The essential elements of the offense of Count II include the defendant's misuse, that is, the paying over, of money "belonging to Buchanan County." Therefore, the prosecutor had to prove beyond a reasonable doubt that the money that Mr. Conway took from the cash drawer on January 7, 1986, belonged to the county. He failed to prove that or to prove facts from which the jury could reasonably have inferred that.

The state's evidence established that the checks and cash regularly collected and placed in the cash drawer included money that did not belong to the county, that is, the money collected for the sale of the plat books, "the money for maps," Ms. Hessmeyer described. That money was not "collected" by the clerk within the meaning of § 576.040. For some unexplained reason, the prosecutor, who knew that the cash drawer contained the plat book sales' receipts that did not belong to the county, made no attempt at all to prove that the money the defendant "borrowed" was county money rather than plat book money.

Even worse, the special prosecutor made no effort to prove that *any* money in the drawer on January 7, 1986, belonged to the county or that *no* money in the drawer that day came from sale of the plat books. The record shows that he knew that plat book money went into that drawer, but he made no attempt to show that less than forty-seven dollars came from the sales of plat books. In fact, although the cash receipts journal, the daily deposit slips and the duplicates of receipts issued by the clerk's office would have shown how much county money had been received on January 7, 1986, the prosecutor adduced none of those records in evidence to show that the clerk's office had collected even one dollar of county money and put it in the drawer on that day. Thus, for all the evidence showed, no county money had gone into the drawer on January 7 and the clerk had duly deposited all collections for Thursday and Friday, January 2 and 3 and Monday, January 6, in accordance with daily practice by the close of business on January 6.

In view of the insufficiency of the evidence to establish beyond a reasonable doubt that defendant Conway misused any money belonging to Buchanan County on January 7, 1986, we reverse the judgment and order the defendant discharged.

All concur.